669 A.2d 975

CHIROPRACTIC NUTRITIONAL ASSOCIATES, INCORPORATED, a Corporation, Appellant,

v.

EMPIRE BLUE CROSS AND BLUE SHIELD, a Corporation, and Allegheny Power System, Incorporated, a Corporation.

Superior Court of Pennsylvania.

Argued May 24, 1995.

Filed Dec. 29, 1995.

438

Edgar D. Harr, Greensburg, for appellant.

Sherry L. Halfhill, Pittsburgh, for appellees.

Before WIEAND, DEL SOLE and CERCONE, JJ.

CERCONE, Judge:

This is a consolidated direct appeal from the trial court's orders which granted the preliminary objections of defendants/appellees and dismissed multiple complaints initiated by plaintiff/appellant. We reverse and remand for further proceedings.

Appellee Allegheny Power System, Incorporated ("Allegheny Power") entered into a contractual agreement with appellee Empire Blue Cross and Blue Shield ("Empire") to provide

health care coverage for Allegheny Power's employees and their dependents. Appellant, Chiropractic Nutritional Associates, Incorporated ("Chiropractic"), provided chiropractic services to certain individuals covered under the group medical insurance policy issued by Empire. Chiropractic billed the insurance carrier directly pursuant to assignments Allegheny Power's insured employees executed in appellant's favor. Although the insurance carrier, Empire, initially paid appellant for the chiropractic services rendered, at some point a dispute developed over the medical necessity of continuing treatments for the insureds or their dependents. Appellant Chiropractic subsequently filed suit against both appellees contesting Empire's denial of benefits to Allegheny Power's employees and seeking the fees owed for services it had rendered to the employees.[1]

The complaints appellant Chiropractic lodged in the Court of Common Pleas alleged, *inter alia*, that the insurance company and the employer, Empire and Allegheny Power, had entered into a contract to provide medical benefits to Allegheny Power's employees and their dependents, including chiropractic care. Appellant also alleged that appellee Allegheny Power had prepared and distributed a handbook to its employees explaining the covered medical and chiropractic therapy available under the terms of the group insurance contract.

1. Appellant initiated eight suits before a District Magistrate. Judgments were entered in favor of appellant as follows:
    (1) on May 2, 1994, $360.50 for treatment of Judith Schlenke, a dependent of Carl Schlenke;
    (2) on April 26, 1994, $792.00 for treatment of Aaron Dancho, a dependent of Nina Dancho;
    (3) on April 26, 1994, $845.00 for treatment of Adam Dancho, a dependent of Nina Dancho;
    (4) on May 2, 1994, $713.00 for treatment of Charles Shields;
    (5) on May 2, 1994, $823.00 for treatment of Cherie Moose;
    (6) on May 2, 1994, $667.00 for treatment of Paul Crabill;
    (7) on May 2, 1994, $346.50 for treatment of Nancy Crabill, a dependent of Paul Crabill; and
    (8) on May 2, 1994, $1,757.00 for treatment of Daniel Crabill, a dependent of Paul Crabill.
    Empire timely filed a notice of appeal in the Court of Common Pleas of Westmoreland County for each of the eight judgments. Appellant promptly filed complaints with the Court of Common Pleas of Westmoreland County.

The Allegheny Power handbook explicitly states that employees may assign their right to collect benefits.[2] Appellees responded with preliminary objections averring that appellant lacked the capacity to file suit in any of the matters before the Court of Common Pleas. Appellees averred that, contrary to the terms of the Allegheny Power employee handbook, the Master Agreement between Empire and Allegheny Power actually forbids assignment of benefits.[3] Thus, appellees concede that Allegheny Power gave its employees covered under the group insurance agreement incorrect information in the handbook describing the medical coverage provided by Empire.[4]

The trial court scheduled a hearing on the preliminary objections for November 29, 1994. Ultimately, the lower court determined that Chiropractic lacks the capacity to bring suit because the court found the non-assignment clause in the

2. *See* Plaintiff's Exhibit "A" to all Complaints filed in this matter, APS Core Medical Plan at 6, Covered Expenses ¶ 14, Schedule D1–1/93 (covered expenses include chiropractor's and osteopath's charges for necessary treatment); and APS Core Medical Plan at 14, Assignment of Benefits Clause, Schedule D1–1/93 ("Benefits will automatically be assigned to hospitals. An employee may assign his/her benefits to other providers of services.")

3. *See* Defendants' Exhibit "B" to all Preliminary Objections filed in this matter, Group Contract. The Payment of Benefits Clause set forth on page 13 of the Group Contract, Article III, Section K.1, states the following: "The right of a Member to receive payment is not assignable." The Group Contract defines "Member" as "the Subscriber, and if Family Coverage is in force, the Subscriber's Dependents, but not any person eligible for Medicare except as specifically stated in this Contract or in Exhibit I." *Id.* at 5.

4. Appellees contend that the inaccurate representations in the employee handbook are warranted and completely excused by the following "warning" language in the handbook:

Each benefit summary and the payment of benefits described herein are subject to the provisions of the underlying plan document and contract with the insuring company. Benefits are subject to change by the Company. Although every effort has been made for accuracy, the possibility of error always exists. The employee should not take any action in reliance on availability or the amounts of benefits shown without verification of such benefits by the Personnel Department.

*See* Plaintiff's Exhibit "A" to all Complaints filed in this matter, *Your Employee Benefits*, Section A "Introduction" at 2.

master agreement to be enforceable against all third parties, including medical providers. On December 6, 1994, the trial judge therefore sustained the preliminary objections and dismissed all of appellant's complaints. Appellant Chiropractic filed timely notices of appeal. On January 10, 1995, the Superior Court consolidated the appeals so that they could be briefed and argued as a single matter.

The instant appeal presents two issues for our consideration:

1. Where patients assign their cause of action for unpaid treatment bills (detriments) to the health care provider, does a non-assignement [sic] of benefits clause in the group contract [between the patients' employer and the insurance company] preclude a remedy to the plaintiff [health care provider]?

2. Does a health care provider, which has obtained an assignment of cause of action from its patients, have the capacity to sue?

Before addressing these claims, it is important to note the specific procedural posture of this case. The complaints underlying this appeal were filed by a third party assignee, the health care provider, who purports to "stand in the shoes" of the assignor-employees in bringing suit to challenge the denial of medical benefits.[5]

**5.** The language of the assignments from the insured employees to appellant Chiropractic provides as follows:

### ASSIGNMENT OF CAUSE OF ACTION

In the event any insurance company obligated by contractual agreement to make payment to me or to Chiropractic Nutritional Associates, Inc., for the charges made for service, refuses to make such payment upon demand, I hereby assign transfer and convey to Chiropractic Nutritional Associates, Inc. the cause of action that exists on my favor against any such company or person and I authorize Chiropractic Nutritional Associates, Inc. to prosecute said action either in my name or their name to resolve said claim and collect legal expenses as they see fit.

I understand that I am financially responsible for all charges whether or not paid by any third party. I agree that all charges are payable and collectable in this country. I hereby authorize Chiropractic Nutritional Associates, Inc. to make inquires, [sic] endorse drafts, and to release any information to my insurance company, employer, attorney, or benefit plan about my case.

Several other preliminary matters must be considered prior to discussing the merits of appellant's claims. First, we must determine whether to apply state or federal law in our analysis. The issues before us concern the proper interpretation of the provisions of an employer sponsored group health insurance plan. For the reasons explained *infra,* appellant is correct in asserting that the trial court erred by applying state law rather than the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Appellees have not contested this point.

Congress enacted ERISA to protect the interests of employees and their beneficiaries in employee benefit plans. *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 137, 111 S.Ct. 478, 482, 112 L.Ed.2d 474, 482 (1990) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983)). ERISA explicitly provides for concurrent federal and state jurisdiction over benefit claims. 29 U.S.C. § 1132(e)(1). Thus, the Act permits the plaintiff to choose the forum and initiate suit either in state court or federal district court. *Id.*[6] ERISA also contains a preemp-

I furthermore irrevocably authorize and direct any of these agents to pay what is due for professional services directly to Chiropractic Nutritional Associates, Inc. I give permission to the doctor to administer treatment and perform such general procedures as he deems necessary in the diagnosis and treatment of my condition.
*See* Plaintiff's Exhibit "B" to all Complaints filed in this matter.

**6.** The present version of section 1132(e)(1) confers concurrent jurisdiction on federal and state courts in actions brought under 29 U.S.C. § 1132(a)(1)(B) to recover benefits, enforce rights, or clarify future benefits under the terms of a plan. We are cognizant of the decision of this court in *Nobers v. Crucible, Inc.,* 431 Pa.Super. 398, 636 A.2d 1146 *appeal denied,* 537 Pa. 665, 644 A.2d 1201 (1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 301, 133 L.Ed.2d 206 (1995) that the courts of Pennsylvania lack subject matter jurisdiction to consider an ERISA claim. However, *Nobers* involved matters beyond the strict scope of section 1132(a)(1)(B). It is therefore not dispositive as to state court jurisdiction in the instant case which is confined solely to determining appellant's standing to enforce rights pursuant to a group health plan. We note additionally that *Nobers* had its inception in an action brought in federal district court in the early 1980's premised upon events which occurred in the 1970's. The language of section 1132 has been modified many times in the interim, most recently in 1993 and again in 1994.

tion clause intended to ensure that employee benefit plans and plan sponsors are subject to a uniform body of law, no matter which forum considers the case. *Ingersoll–Rand,* 498 U.S. at 142, 111 S.Ct. at 484, 112 L.Ed.2d at 485–86. Whenever a state court exercises jurisdiction over a matter pertaining to employee benefits, that court must first resolve whether to apply state law or ERISA. *Id.*

As a general proposition, ERISA supercedes "any and all State laws insofar as they may ... relate to any employee benefit plan...." 29 U.S.C. § 1144(a). *See Arber v. Equitable Beneficial Life Insurance Co.,* 848 F.Supp. 1204, 1210 (E.D.Pa.1994) (ERISA comprehensively regulates employee welfare benefit plans that, through purchase of insurance or otherwise, provide medical, surgical or hospital care, or benefits in event of sickness, accident, disability or death). A determination of preemption is ultimately a question of Congressional intent. *Ingersoll–Rand v. McClendon,* 498 U.S. at 137–38, 111 S.Ct. at 482, 112 L.Ed.2d at 483. ERISA's preemption clause is conspicuous for its breadth and was designed to establish regulation of employee benefits as an exclusively federal concern. *Id.* at 138, 111 S.Ct. at 482, 112 L.Ed.2d at 483. Federal preemption applies whenever an action "relates to" an employee benefit plan. *Id.* at 139, 111 S.Ct. at 483, 112 L.Ed.2d at 484. *See also Travitz v. Northeast Dept. ILGWU Health and Welfare Fund,* 13 F.3d 704, 709 (3d Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994) (broadly worded preemption clause in ERISA establishes, as an area of exclusive federal concern, the subject of every state law that relates to an employee benefit plan governed by ERISA); *Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge Securities, Inc.,* 877 F.Supp. 948, 954–55 (E.D.Pa.1995) (state law is preempted by ERISA whenever the claim relates in some way to an employee benefit plan); *Harding v. Duquesne Light Co.,* 882 F.Supp. 422, 427 (W.D.Pa.1995) (any state law that has connection with or reference to ERISA employee benefit plan will be preempted by ERISA).

■ The United States Supreme Court has explicitly held that a claim against an insurance carrier for ceasing to pay benefits under a group health policy is preempted by ERISA. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39, 48 (1987). *See Misic v. Building Service Employees Health and Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir.1986) (state law cause of action based on a theory of assignment of group health insurance benefits is preempted by ERISA); *Psychiatric Institute of Washington, D.C. v. Connecticut General Life Insurance Co.*, 780 F.Supp. 24 (D.D.C.1992) (ERISA preempted health care service provider's breach of contract claim that group health insurer was obligated to pay assignee health care provider who "stands in the shoes" of the assignor plan participants). The crux of appellant's allegations against Empire is that the insurance company improperly declined to continue paying for the assignors' chiropractic treatments pursuant to the terms of a group health insurance policy. We therefore conclude that the instant matter is governed by ERISA and its case law progeny.

Preemption under ERISA does not act as a defense to a state law claim, which is the usual effect of federal preemption. *Amos v. Blue Cross–Blue Shield of Alabama*, 868 F.2d 430, 432 (11th Cir.1989), *cert. denied*, 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989). Instead, ERISA preemption converts the state claim into a federal question. *Id.* (citing *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). When federal law preempts state law, federal statutory law as well as federal common law are substituted for the preempted state law. *Misic v. Building Service Employees Health and Welfare Trust*, 789 F.2d at 1377 (citing *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 176, 63 S.Ct. 172, 173, 87 L.Ed. 165 (1942) and *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158–63 & nn. 12–13, 103 S.Ct. 2281, 2287–90 & nn. 12–13, 76 L.Ed.2d 476, 485–86 nn. 12–13 (1983)). The federal courts are empowered to create a federal common law under ERISA in order to effectuate Congress' intent to provide a

comprehensive federal regulatory scheme. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80, 92 (1989).

When state courts entertain federal causes of action, the parties' rights and the defenses which may be raised are defined by federal law. *Murtagh v. County of Berks,* 535 Pa. 50, 57–58, 634 A.2d 179, 183 (1993), *cert. denied,* ——— U.S. ———, 114 S.Ct. 1397, 128 L.Ed.2d 71 (1994) (citing *Howlett v. Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 2442, 110 L.Ed.2d 332, 353 (1990)). The reason for this rule is to ensure that the outcome of federal questions will be the same, whether they are decided in a state or federal forum. *Id.* We note that the decisions of the federal district courts and courts of appeal, including those of the Third Circuit Court of Appeals, are not binding on Pennsylvania courts, even when a federal question is involved. *Breckline v. Metropolitan Life Insurance Co.,* 406 Pa. 573, 578, 178 A.2d 748, 751 (1962); *Cianfrani v. Johns-Manville Corp.,* 334 Pa.Super. 1, 6, 482 A.2d 1049, 1051 (1984); *Commonwealth ex rel. Goodfellow v. Rundle,* 203 Pa.Super. 419, 434, 201 A.2d 615, 623, *transferred on other grounds* to 415 Pa. 528, 204 A.2d 446 (1964); *Southeastern Pennsylvania Transportation Authority v. Pennsylvania Public Utility Commission,* 140 Pa.Commw. 270, 282 n. 9, 592 A.2d 797, 803 n. 9 (1991), *appeal denied,* 531 Pa. 642, 611 A.2d 714 (1992). Although the decisions of the federal courts lower than the United States Supreme Court are not binding on Pennsylvania courts, they do have a persuasive authority with regard to federal questions. *Commonwealth v. Giffin,* 407 Pa.Super. 15, 26, 595 A.2d 101, 107 (1991); *Hangelias v. Dawson,* 158 Pa.Super. 370, 374, 45 A.2d 392, 394 (1946). When possible, it is appropriate for the Superior Court of Pennsylvania to follow the Third Circuit's ruling on federal questions to which the United States Supreme Court has not yet provided the ultimate answer. *Nobers v. Crucible, Inc.,* 431 Pa.Super. 398, 406, 636 A.2d 1146, 1150, *appeal denied,* 537 Pa. 665, 644 A.2d 1201 (1994), *cert. denied,* ——— U.S. ———, 116 S.Ct. 301, 133 L.Ed.2d 206 (1995).

■ Unfortunately, neither the United States Supreme Court nor the Third Circuit Court of Appeals has published an opinion determining whether a health care provider possesses standing under ERISA pursuant to an assignment of the right to bring suit challenging the denial of group health benefits. It is clear that health care providers do not have independent standing to sue under ERISA because they are "non-enumerated" parties. 29 U.S.C. § 1132(a). *See generally Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1287–1289 (5th Cir.1988) (broadly discussing persons and entities possessing the capacity to bring suit pursuant to ERISA). Under the federal common law of ERISA, an assignee with a valid assignment has the right to enforce the claims of his assignor. *Misic v. Building Service Employees Health and Welfare Trust*, 789 F.2d at 1378; *Psychiatric Institute of Washington D.C. v. Connecticut General Life Insurance Co.*, 780 F.Supp. at 30 n. 9 (citing cases, including *United States Fidelity & Guar. Co. v. United States*, 231 U.S. 237, 243, 34 S.Ct. 88, 90, 58 L.Ed. 200 (1913)). However, the federal courts also recognize that the rights of an assignee can rise no higher than those of the assignor. *Gardner v. Surnamer*, 608 F.Supp. 1385, 1391 (E.D.Pa.1985).[7]

The Ninth Circuit's decision in *Misic* is the seminal case which recognizes that health care providers *do* have the capacity to sue under ERISA if they are assignees of group health insurance plan beneficiaries and are enforcing the assigned rights.

Health and welfare benefit trust funds are designed to finance health care. Assignment of trust monies to health care providers results in precisely the benefit the trust is designed to provide and [ERISA] is designed to protect. Such assignments also protect beneficiaries by making it

7. The cases decided under ERISA do not explicitly apply this rule of contract law. However, the developing common law of ERISA does apply it *sub silentio*. *See, e.g., St. Francis Regional Medical Center v. Blue Cross and Blue Shield of Kansas, Inc.*, 49 F.3d 1460 (10th Cir. 1995); *Hermann Hospital v. MEBA Medical and Benefits Plan*, 959 F.2d 569 (5th Cir.1992); *Davidowitz v. Delta Dental Plan of California, Inc.*, 946 F.2d 1476 (9th Cir.1991) (discussing the RESTATEMENT (SECOND) OF CONTRACTS § 322 (1981)).

unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan. Moreover, assignments permit a trust fund to obtain improved benefits for beneficiaries by bargaining with health care providers for better coverage and lower rates.

For these reasons we conclude ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider.

*Misic,* 789 F.2d at 1377 (footnote omitted). Broadly speaking, the federal courts which have considered this question after the publication of *Misic* in 1986 have followed the reasoning of the Ninth Circuit and held that group health insurance benefits are assignable under ERISA. *See, e.g., Hermann Hospital v. MEBA Medical & Benefits Plan, supra* and at 959 F.2d 569 (5th Cir.1992) (ERISA benefits are assignable to health care providers); *Miami Children's Hospital, Inc. v. Malakoff,* 765 F.Supp. 718, 720 (S.D.Fla.1991) (although ERISA prohibits assignment of pension benefits, it does not limit assignment of health care benefits); *Albert Einstein Medical Center v. National Benefit Fund for Hospital and Health Care Employees,* 740 F.Supp. 343, 350–51 (E.D.Pa.1989) (ERISA does not preclude beneficiary from assigning right of reimbursement to health care provider). As a general proposition, the federal courts have held that ERISA grants a health care provider assignee the capacity to initiate suit to vindicate rights acquired from assignor group health plan beneficiaries. *Charter Fairmount Institute v. Alta Health Strategies,* 835 F.Supp. 233, 235–36 (E.D.Pa.1993).[8] We therefore conclude that nothing in ERISA prevents a health care provider from bringing suit to enforce a valid assignment of health insurance benefits.

**8.** *See also id.* (discussing cases decided within the Third Circuit which have held that health care providers lack standing to initiate suit on their own behalf in the *absence* of an assignment from a party enumerated under ERISA).

However, ERISA's silence on the assignability of health plan benefits is not the equivalent of a mandate granting an absolute right to assign such benefits. *Davidowitz v. Delta Dental Plan of California, Inc.*, 946 F.2d 1476, 1480–81 (9th Cir.1991). ERISA neither suggests the existence of an affirmative policy favoring assignment, nor invalidates anti-assignment clauses. *Washington Hospital Center Corp. v. Group Hospitalization and Medical Services, Inc.*, 758 F.Supp. 750, 752–53 n. 2 (D.D.C.1991). *Accord Carland v. Metropolitan Life Insurance Co.*, 727 F.Supp. 592, 596–98 (D.Kan.1989), *aff'd*, 935 F.2d 1114 (10th Cir.1991), *cert. denied*, 502 U.S. 1020, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991). In the absence of published authority by the Third Circuit Court of Appeals, we have carefully considered the decisions of other jurisdictions. We are persuaded by the reasoning of the Tenth Circuit that ERISA's silence as to the issue of assignability of group health benefits leaves the matter open for agreement between the contracting parties.

> It would be contrary to Congress' laissez-faire attitude of declining to establish any statutory rule either requiring or prohibiting the assignability of benefits to allow states to intervene with their own policies mandating or forbidding assignability. As Congress has chosen not to interfere with the parties' own freedom of contract on this matter, so must we insist that the states not interfere with the parties' freedom of choice.

*St. Francis Regional Medical Center v. Blue Cross and Blue Shield of Kansas, Inc.*, 49 F.3d 1460, 1464 (10th Cir.1995). We note that this holding is consistent with recent decisions by the Eighth and Ninth Circuits. *See Arkansas Blue Cross and Blue Shield v. St. Mary's Hospital, Inc.*, 947 F.2d 1341, 1349–50 (8th Cir.1991), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2305, 119 L.Ed.2d 227 (1992) (state statute prohibiting non-assignment clauses pre-empted by ERISA); *Davidowitz v. Delta Dental Plan of California, Inc.*, 946 F.2d at 1480–81 (Congress' silence on the matter of assignability of health insurance benefits indicates an intention to allow the free marketplace to work out competitive, cost effective "medical

expense reducing structures" such as non-assignment clauses). We therefore conclude that ERISA leaves the matter of assignability of insurance benefits to the contracting parties.

In this case, the lower court found that appellant lacked the capacity to bring suit because the existence of an anti-assignment clause in the Blue Cross/Blue Shield Master Agreement prevented the insureds from validly assigning their benefits to appellant. However, a person does not lack standing to *claim* benefits under ERISA simply because it may turn out that he or she is not entitled to prevail and ultimately *collect* the benefits. *Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134, 152 (3d Cir.1987), *aff'd in part, rev'd in part on other grounds*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Moreover, denying standing to health care providers as assignees of beneficiaries may undermine ERISA's goal of improving benefit coverage for employees. *Lutheran Medical Center v. Contractors Health Plan*, 25 F.3d 616, 619 (8th Cir.1994). The courts must take cognizance of the fact that medical providers often decline to render expensive treatment unless it is guaranteed by an insurer. *Garner v. Capital Blue Cross*, 859 F.Supp. 145, 150 n. 6 (M.D.Pa.1994), *aff'd*, 52 F.3d 314 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

> Many providers seek assignments of benefits to avoid billing the beneficiary directly and upsetting his finances and to reduce the risk of non-payment. If their status as assignees does not entitle them to federal standing against the plan, providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary. Either alternative, indirect and uncertain as they are, would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them "up-front." The providers are better situated and financed to pursue an action for benefits owed for their services.

*Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d at 1289–90 n. 13. Because appellant obtained assignments from the legitimate insurance plan beneficiaries, we

find that it possessed at least a colorable claim under ERISA and therefore had the capacity to initiate the litigation underlying this appeal. However, this does not resolve the question of whether the specific non-assignment clause contained in the Master Contract between appellees Empire and Allegheny Power precludes appellant from achieving any remedy.

■ Appellees argue that the following language from the Group Contract bars appellant from recovery:

The right of a Member to receive payment is not assignable. Group Contract, Article III, Section K.1.[9] We agree with appellees that the terms of the Group Contract may prevent the subscriber members from conferring a valid assignment upon appellant which would entitle it to directly collect uncontested benefits owed under the insurance plan. *But see Hermann Hospital v. MEBA Medical and Benefits Plan,* 959 F.2d at 575 (wherein the Fifth Circuit Court of Appeals found a general anti-assignment clause of the type at issue here to be ineffective at barring assignment of rights to a medical provider and holding that such a clause only applied to unrelated, non-medical provider, third-party assignees). However, we find nothing in the instant provision which prevents a subscribing member from assigning his or her right to bring an action to enforce the contract in the event that benefits are denied.[10]

*Lutheran Medical Center v. Contractors Health Plan, supra,* confronted the Eighth Circuit with a problem remarkably similar to that presented by the instant case. Section 22 of the Declaration of Trust for the group health plan at issue in

---

**9.** As previously explained, a "member" is a subscriber or a subscriber's dependents.

**10.** We do not find the master contract to be ambiguous upon this point. The specific provision at issue here simply fails to mention the assignment of a cause of action to contest the denial of benefits. However, to the extent that the contract language could be deemed unclear, any ambiguity would have to be resolved in favor of the employee subscribers and their assignee. *See Curcio v. John Hancock Mutual Life Insurance Company,* 33 F.3d 226, 231 (3d Cir.1994) (if the language of an insurance policy is susceptible to more than one reasonable interpretation, it will be found ambiguous and must be construed in favor of the insured).

*Lutheran Medical Center* contained the following anti-assignment clause:

> No employee shall at any time, either during the life of said Trust, or upon the termination thereof, or upon his withdrawal or severance therefrom, in any manner, have any right to assign his rights or benefits under such Plan or this Trust, or to receive a cash consideration in lieu of such benefits.

*Id.*, 25 F.3d at 619. Pursuant to this language, the Health Plan contended that a medical provider assignee had no cognizable right under ERISA to challenge the denial of benefits to plan subscribers. The court of appeals first noted that the plan had not been administered in strict conformity with the anti-assignment provision as evidenced by the fact that benefits were paid directly to assignees for an appreciable period of time prior to the ultimate denial of benefits. *Id.* However, the court held that the anti-assignment clause could be enforced against a medical provider to the extent that the language of the group contract forbade direct payment to an assignee of "rights" or "benefits" due under the group health insurance plan. Nevertheless, the court also determined that the right to assign a *cause of action* was separate and distinct from the right to assign *benefits*. *See also Equifax Services, Inc. v. Hitz,* 905 F.2d 1355, 1361 (10th Cir.1990) (citing the RESTATEMENT (SECOND) OF CONTRACTS § 316 cmt c (1981) as authority for the conclusion that a contract consists of a bundle of rights which are separately assignable depending upon the nature of the specific right at issue). As the court explained in *Lutheran Medical Center:*

> [The] anti-assignment clause does not prevent [the plaintiffs] from suing the Plan. Section 22 clearly prohibits assignment of "rights or benefits" under the Plan, but does not prohibit assignment of causes of action arising after the denial of benefits.

*Id.*, 25 F.3d at 619. The Eighth Circuit reasoned that invalidating the beneficiaries' assignments permitting a medical care provider to challenge the denial of benefits would ultimately achieve nothing because the causes of action would

merely revert back to the employee-insureds. After delay and expense to the employees, all of the claims premised upon the denial of benefits could again be presented for decision by the trial court. *See id.* at 619–20.

In this case, as in *Lutheran Medical Center,* Empire initially paid employee benefits directly to the assignee medical provider but later attempted to use an anti-assignment clause to prevent the assignee from bringing suit to challenge the denial of insurance coverage. The language contained in the Group Contract at issue instantly says nothing about the employees' right to assign a cause of action for the purpose of contesting the plan administrator's decision to deny coverage for medical services which have already been rendered by a provider. At most, the contractual provision merely raises a question as to who would be entitled to collect any verdict which might become payable if appellant ultimately succeeds in its claims. We are persuaded by the reasoning of the Eighth Circuit in *Lutheran Medical Center* and therefore conclude that the Group Contract before this court does not prohibit the assignment of a cause of action arising from the denial of benefits.

We are cognizant of appellees' argument that the holding in *Lutheran Medical Center* should not apply instantly because appellant obtained the assignments before coverage was denied. However, we can see no logical basis for appellees' contention that a cause of action for breach of contract must be ripe before a legally valid assignment can be executed. We note that appellees have provided no statutory authority or case precedent decided under either Pennsylvania law or the federal common law of ERISA for their conclusion in this regard.

■ It is certainly true that, under Pennsylvania state law, an unliquidated personal injury tort claim is not a property right and is not assignable. *DeMasi v. DeMasi,* 366 Pa.Super. 19, 46, 530 A.2d 871, 884 (1987), *appeal denied,* 535 Pa. 619, 629 A.2d 1380 (1993). *See* MURRAY ON CONTRACTS § 138 B at 806 (3d ed.1990) (strong public policy generally prohibits

assignability of unliquidated personal injury claims to preclude champerty and "to prevent the unscrupulous from purchasing causes of action dealing in pain and suffering"). However the instant case does not involve an unliquidated tort claim. Here, the insured employees assigned their right to bring suit for breach of contract in the event that their insurer ever declined to make payment for medical services rendered.[11]

■ The Court of Common Pleas dismissed appellant's complaints on the basis of the preliminary objections filed by Empire and Allegheny Power. The Pennsylvania Supreme Court has explained that preliminary objections which result in the dismissal of a cause of action should be sustained only in cases that are "clear and free from doubt" that the plaintiff will be unable to prove legally sufficient facts to establish any right to relief. *Bower v. Bower*, 531 Pa. 54, 57, 611 A.2d 181, 182 (1992). All doubts in this determination should be resolved by overruling the preliminary objections. *National Check v. First Fidelity Bank*, 442 Pa.Super. 211, 214, 658 A.2d 1375, 1377 (1995). In light of the foregoing analysis, we find that dismissal at the preliminary objection stage is premature because it is not clear and free from doubt that appellant will be unable to prove facts legally sufficient to establish its right

11. Appellees have cited FARNSWORTH ON CONTRACTS § 11.5 (1982) for the proposition that one cannot assign a "future right" if that right does not exist at the time of the assignment. This is not an accurate representation of the views of Farnsworth or of other authorities on contract law. There is no question that one can make an effective assignment of an executory right and even a right subject to an express condition under an existing contract. MURRAY ON CONTRACTS § 139 A at 810. The impediments to the assignment of so-called "future rights" do not apply to a person's assignment of a right under an existing contract on the grounds that it has not ripened into a right to demand performance solely because it is conditioned upon some event that has not yet occurred. FARNSWORTH ON CONTRACTS § 11.5 at 87 (1990). A present transfer of rights that are not yet due or may never become due is effective if it appears that there is an existing contract out of which the claim may arise in the future. WILLISTON ON CONTRACTS § 413 at 55 (3d Ed.1960). *See also Loyola University Medical Center v. Med Care HMO*, 180 Ill.App.3d 471, 477, 129 Ill.Dec. 360, 364, 535 N.E.2d 1125, 1129 (1989) (discussing right of assignee medical provider to pursue contract claim against insurer when assignment was made prior to breach).

to relief under the applicable federal law.[12]

The orders entered by the lower court on December 6, 1994 granting appellees' preliminary objections are vacated and the complaints are reinstated. The case is remanded for further proceedings consistent with this memorandum. Superior Court jurisdiction is relinquished.

12. As appellees note in their brief, the trial court's ruling was premised only upon a consideration of appellant's capacity to bring suit in light of the anti-assignment clause. On remand, the trial court may consider the additional arguments which appellees raised in their preliminary objections.