**CASINO CRUISES INVESTMENT CO., L.C., d/b/a The M/V Diamond Royale Casino and Zurich American Insurance Group a/s/o its assured, Casino Cruises Investment Co., L.C., and a/a/o Richard Bush, Plaintiffs,**

v.

**RAVENS MANUFACTURING COMPANY, Defendant.**

**No. 98–1275–CIV–ORL–18B.**

United States District Court, M.D. Florida, Orlando Division.

Aug. 9, 1999.

William David Jester, Timothy F. Burr, Galloway, Johnson, Tompkins & Burr, Gulf Breeze, FL, for plaintiffs.

Sheldon D. Stevens, Andrew William Menyhart, Stevens & Menyhart, P.A., Merritt Island, FL, for defendant.

## ORDER

G. KENDALL SHARP, District Judge.

Casino Cruises Investment Co., L.C., and its insurer, Zurich American Insurance Group, bring this action against Ravens Manufacturing Co. to recover settlement proceeds that the plaintiffs paid to Richard Bush for injuries that Mr. Bush suffered when he fell from a gangway while disembarking from the M/V Diamond Royale Casino, a casino gambling vessel owned by Casino Cruises. Ravens presently brings a motion to dismiss arguing that the court lacks jurisdiction and that the plaintiffs have failed to state a claim. The plaintiffs respond in opposition. After reviewing the parties' argu-ments, the amended complaint, and the applicable law, the court concludes that the defendant's motion should be granted in part and denied in part.

## I. Background

This action arises from an accident that occurred on August 31, 1997. While dis-embarking from the M/V Diamond Royale Casino, Richard Bush, a passenger aboard the vessel, stumbled on the gangway, fell, rolled between the gangway's handrails, and dropped into the water below. As a result of the fall, Mr. Bush suffered severe injuries.

Mr. Bush brought a claim against the vessel's owner, Casino Cruises Investment Co., L.C., who in turn called upon its in-surer, Zurich American Insurance Group, to settle the claim. Zurich entered into settlement negotiations with Mr. Bush's attorney and settled the claim for money damages. As part of the settlement agreement, Mr. Bush assigned to Casino Cruises and Zurich his right to proceed against the manufacturer of the gangway, Ravens Manufacturing Co.

Before executing the agreement, Zurich and Casino Cruises sent a letter on June 3, 1998 to Ravens notifying Ravens of the pending settlement, informing Ravens of the settlement's terms, and indicating the plaintiffs' intent to seek indemnity and contribution from Ravens for any money paid out in settlement of Mr. Bush's claims. Although the plaintiffs asked Rav-ens to respond to the letter within a week, Ravens failed to do so.

On June 10, 1998, Zurich and Casino Cruises entered into a settlement with Mr. Bush whereby Zurich would pay Mr. Bush $400,000 in structured payments and also negotiate and settle Mr. Bush's Medicare and Medicaid claims and liens. Casino Cruises and Zurich then brought the pres-ent action.

## II. Discussion

### A. Legal Standard

This court may grant the defendant's motion to dismiss only if the defendant

demonstrates " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In making this determination, the court must accept the allegations in the complaint as true and must view the allegations in the light most favorable to the plaintiff. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir.1992). The court may consider not only the allegations in the complaint itself but also any contracts and other documents attached to and described in the plaintiff's complaint. *See* Fed.R.Civ.P. 10(c) ("a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"); *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir.1984); *Amfac Mortgage Corp. v. Arizona Mall*, 583 F.2d 426, 429–30 (9th Cir.1978).

## B. Merits

In the plaintiffs' three-count amended complaint, the plaintiffs press claims for negligence, strict liability, and breach of implied warranty. The plaintiffs bring these claims indirectly as the assignee of Mr. Bush and directly under theories of indemnity and contribution.

Ravens argues that the plaintiffs cannot bring any claims as the assignee of Mr. Bush because claims for personal injuries cannot be assigned. Also, Ravens argues that the plaintiffs cannot bring indemnity or contribution claims because the court lacks jurisdiction over these claims and because the plaintiffs have failed to adequately plead these claims. The court will address each of Ravens' arguments in turn.

### 1. Whether the Plaintiffs Can Bring Claims as the Assignee of Mr. Bush

Ravens first contends that dismissal is appropriate because the plaintiffs are attempting to assign a personal injury claim, and, under the authority of *Forgione v. Dennis Pirtle Agency, Inc.*, 701 So.2d 557 (Fla.1997), personal injury claims are not assignable. The plaintiffs counter that, while personal injury claims may not be assignable under Florida law, the rule does not apply in the context of admiralty cases.

Neither party can cite any law addressing whether personal injury claims are assignable in the context of an admiralty action. In the absence of any direct authority, admiralty courts often draw upon state law as a guide to interpretation of federal admiralty principles. *See, e.g., Earl v. Bouchard Transp. Co.*, 735 F.Supp. 1167, 1170 (E.D.N.Y.1990), *aff'd in part, remanded in part on other grounds by* 917 F.2d 1320 (2nd Cir.1990).

Under the common law and the law of most states, personal injury claims are not assignable absent a statute to the contrary. *See, e.g.,Illinois Farmers Ins. Co. v. Makovsky*, 293 Ill.App.3d 77, 228 Ill. Dec. 559, 689 N.E.2d 618, 623 (1997); *Generali—U.S. Branch v. Southeastern Security Ins. Co.*, 229 Ga.App. 277, 493 S.E.2d 731, 735 (1997); *Schweiss v. Sisters of Mercy, Inc.*, 950 S.W.2d 537, 538 (Mo.Ct. App.1997); *Horton v. New South Ins. Co.*, 122 N.C.App. 265, 468 S.E.2d 856, 858 (1996); *Chiropractic Nutritional Assocs., Inc. v. Empire Blue Cross and Blue Shield*, 447 Pa.Super. 436, 669 A.2d 975, 983 (1995); *Ducote v. Commercial Union Ins. Co.*, 616 So.2d 1366, 1369 (La.Ct.App. 1993); *cf. Charles v. Tamez*, 878 S.W.2d 201, 206 (Tex.App.1994) ("causes of action, including personal injury actions, are assignable absent a statutory bar"). The rule is meant to prevent the "evils of champerty and maintenance." *Hospital Serv. Corp. v. Pennsylvania Ins. Co.*, 101 R.I. 708, 227 A.2d 105, 109 (1967).

The court finds that the common law rule applies to admiralty actions because the rule applies in virtually all jurisdictions, because the plaintiff cannot explain why the policy considerations underlying the rule do not carry equal force in the context of admiralty actions,

and because the plaintiff cannot cite any law showing that the rule does not apply in admiralty actions. Because personal injury claims are not assignable in admiralty cases, the plaintiffs cannot bring their claims as the assignee of Mr. Bush.

### 2. Whether the Court Has Jurisdiction Over the Indemnity and Contribution Claims

The plaintiffs argue that, even if admiralty law prohibits the assignment of personal injury claims, the plaintiffs can still sue Ravens directly for indemnity and contribution. The defendant challenges this conclusion by arguing that admiralty jurisdiction does not extend to indemnity or contribution actions.

■ It is well-established that a noncontractual indemnity or contribution action, such as the one in this case, is within the scope of the federal courts' admiralty jurisdiction where the action is derived from an underlying maritime tort. *See, e.g., Tri–State Oil Tool Indus., Inc. v. Delta Marine Drilling Co.,* 410 F.2d 178, 186 (5th Cir.1969) (finding that maritime law governed a noncontractual indemnity claim because the underlying tortious conduct occurred in navigable waters); *White v. Johns–Manville Corp.,* 662 F.2d 243, 247 (4th Cir.1981) ("[a] noncontractual indemnity claim arising [from a maritime tort] is similarly a maritime claim"); *Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa,* 761 F.2d 229, 235 (5th Cir.1985) ("the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution"). Here, the underlying action—Mr. Bush's fall from a gangway—is clearly a maritime tort. *See The Admiral Peoples,* 295 U.S. 649, 652, 55 S.Ct. 885, 79 L.Ed. 1633 (1935). Because noncontractual indemnity actions arising from a maritime tort are within the scope of this court's jurisdiction and because the plaintiffs' claims arise from a maritime tort, this court has jurisdiction over the plaintiffs' indemnity and contribution claims.

The defendant contends that this court does not have jurisdiction because the present case is controlled by *Consolidated Bathurst v. Rederiaktiebolaget Gustaf Erikson,* 645 F.Supp. 884 (S.D.Fla.1986). In *Consolidated Bathurst,* a longshoreman, who was injured while working aboard a ship, obtained a judgment against the ship's charterer. The charterer then brought an indemnity action against the ship's owner pursuant, not to the original charter agreement, but instead to a second contract whereby the ship owner agreed to hold the charterer harmless. The court held that the charterer's claim based upon the second contract was not within the court's admiralty jurisdiction because "[t]hough the [first contract] that created the right to indemnity was a maritime contract, the second contract, in which the ship owner and its insurer allegedly promised to perform as required by the charter party, was not." *Id.* at 886.

Ravens asserts that *Consolidated Bathurst* stands for the proposition that indemnity actions are per se beyond the scope of admiralty jurisdiction and that, therefore, the plaintiffs' claims in this case are not within this court's jurisdiction. Ravens' assertion is incorrect.

■ Although the court in *Consolidated Bathurst* found that it did not have jurisdiction over the contractual indemnity claim, the court did not establish a per se rule that indemnity actions are outside the scope of admiralty jurisdiction. Instead, the court made its decision only after examining the nature of the second contract and determining that the contract did not relate to ships or shipping. At most the *Consolidated Bathurst* decision stands for the proposition that a contract that solely addresses the issue of indemnity is not a maritime contract. It does not overrule the well-established case law where federal appellate courts have recognized that indemnity actions fall within federal admiralty jurisdiction where the indemnity actions are derived from maritime torts or contracts. Because *Consolidated Bathurst*

did not establish a per se rule that indemnity actions are not within federal admiralty jurisdiction, Ravens' reliance upon *Consolidated Bathurst* is misplaced, and the court has jurisdiction over the plaintiffs' claims.

### 3. Whether the Plaintiffs Adequately Pled Indemnity and Contribution

■ Ravens further argues that, even if the court has jurisdiction over the plaintiffs' indemnity and contribution claims, the plaintiffs have failed to plead the requisite elements for indemnity and contribution. Ravens argues that the plaintiff has failed to state a claim for contribution because, according to Ravens, Florida law provides that "a tortfeasor who enters into a settlement with a claimant is not entitled to contribution from a joint tortfeasor whose liability for injury is not extinguished by settlement." (Def.'s Mem. of Law at 3, doc. 22.)

While this settler-barred rule may apply in Florida, it does not apply under federal admiralty law in the Eleventh Circuit. *See Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1582–84 (11th Cir.1992) ("we reject both the settlement bar and 'settler barred' rules in maritime actions for contribution under the *Self* pro tanto approach"). Although the Supreme Court in *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), adopted a proportionate share rule that obviated the need for a nonsettling tortfeasor to bring a contribution action against a settling tortfeasor, the Supreme Court's opinion in *McDermott* did not address the settler-barred issue of whether a settling tortfeasor may seek contribution from a nonsettling tortfeasor. Because the *McDermott* decision did not address the settler-barred rule, the Eleventh Circuit's rejection of a settler-barred rule in *Great Lakes* is still the law of this jurisdiction and thus governs this case. Because there is no settler-barred rule in the Eleventh Circuit, the plaintiffs' contribution claim cannot be dismissed on the ground that a settler-barred rule precludes the plaintiffs from bringing their contribution claim.

As to the indemnity claim, Ravens attempts to list the elements of the claim and then asserts that "Plaintiff's Amended Complaint fails to set forth these essential elements." (Def.'s Mem. of Law at 2, doc. 22.) This conclusory argument fails to persuade the court that dismissal is warranted as to the plaintiffs' indemnity claim.

### III. Conclusion

In sum, the court holds that (1) the plaintiffs cannot bring any claims as the assignee of Mr. Bush, (2) the court has subject matter jurisdiction over the plaintiffs' indemnity and contribution claims, and (3) the defendant's arguments fail to show that the plaintiffs have not plead the requisite elements for indemnity and contribution. Accordingly, the court **GRANTS** the defendant's motion to dismiss (doc. 21) to the extent that the plaintiffs assert their claims as the assignee of Mr. Bush, but **DENIES** the motion to the extent that the plaintiffs proceed directly under theories of indemnity and contribution.