Terrence BONEY

v.

INTEROCEAN UGLAND MANAGEMENT CORPORATION.

No. CIV. A. G–99–137.

United States District Court, S.D. Texas, Galveston Division.

July 14, 2000.

Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, for Terrence Boney.

Douglas T Gosda, Manning Gosda et al, Houston, TX, for Bridon–American Corporation.

James T Brown, Legge Farrow Kimmitt and McGrath, Houston, TX, for Interocean Ugland Management Corporation.

Lyle R. Rathwell, Rathwell & Nizialek, Woodlands, TX, for Atlantic Cordage Corp.

***ORDER RATIFYING PRIOR DENIAL OF DEFENDANT/THIRD–PARTY PLAINTIFF INTEROCEAN UGLAND MANAGEMENT'S MOTION TO SUBSTITUTE IN AS PARTY PLAINTIFF AGAINST ATLANTIC CORDAGE CORPORATION AND DISMISSING WITH PREJUDICE ALL CLAIMS WHICH INTEROCEAN UGLAND ASSERTS AGAINST ATLANTIC CORDAGE AS ASSIGNEE OF PLAINTIFF BONEY'S CLAIMS***

KENT, District Judge.

Plaintiff Terrence Boney filed suit against Defendant Interocean Ugland Management Corporation ("IUM") for negligence and unseaworthiness under the Jones Act and general maritime law. Boney sought to recover for injuries he suffered on December 2, 1998 while working aboard the vessel HMI DYNACHEM. Although Plaintiff Boney only filed suit against IUM, IUM filed a Third–Party Complaint under Fed.R.Civ.P. 14(c) against Atlantic Cordage Corp ("Atlantic Cordage"). Atlantic Cordage was the alleged manufacturer, seller, and/or distributor of a manilla rope whose failure allegedly contributed to the accident.

Plaintiff Boney and IUM have recently compromised and settled all their disputes and claims related to the December 2, 1998 accident. In settling with Boney, IUM took a purported settlement of any and all claims or causes of action Boney may have had against Atlantic Cordage or any other manufacturer or distributor of manila line. IUM, as assignee of Boney, seeks to prosecute whatever claims Boney may have had against Atlantic Cordage, and consequently filed a Motion To Substitute In As Party Plaintiff Against Atlantic Cordage Corporation.

On April 25, 2000, Atlantic Cordage filed a Motion opposing IUM's attempt to substitute in as real party plaintiff. On May 15, 2000, having carefully considered Atlantic Cordage's Motion in opposition, the Court issued an Order denying IUM's request to substitute in as party plaintiff.

IUM was granted permission to respond. Now before the Court is IUM's Response To Defendant Atlantic's Objection To IUM's Motion To Substitute In As Real Party Plaintiff, filed May 26, 2000. IUM concedes that there is relatively little federal admiralty law squarely addressing the question of whether a settling tortfeasor can take an assignment of a seaman's unliquidated personal injury claim, absent an enabling statute. Moreover, IUM concedes that the only federal court to consider this issue has rejected IUM's position. *See Casino Cruises Inv. Co., L.C. v. Ravens Mfg. Co.*, 60 F.Supp.2d 1285, 1287 (M.D.Fla.1999). Instead, IUM points to the fact that Texas law, unlike a majority of the states and the common-law, permits the assignment of personal injury claims, albeit with many significant exceptions. IUM also argues that public policy favors establishing an admiralty rule which would permit a settling tortfeasor to take an assignment of plaintiff's personal injury claims.

The fact that Texas law sometimes permits such assignments is hardly binding on a Texas federal court sitting in admiralty. The Court is significantly more persuaded by the fact that the majority of states, the common-law, and the only federal admiralty court to consider the question, all reject such assignments.

IUM likewise does not offer a convincing explanation for why public policy should permit a settling tortfeasor to take an assignment of plaintiff's unliquidated personal injury claims. Of course, such a policy may sometimes encourage settlements. On the other hand, if IUM is permitted to step into the shoes of Plaintiff Boney by taking an assignment of Boney's claims, IUM may potentially recover more on the assigned claims that it paid Boney in settlement. A settling tortfeasor seeking contribution or indemnity can at best break even; IUM instead seeks an opportunity to make a *profit* in the tort-feasing business. The Court does not understand how public policy can favor such a result, especially since the original object of the Court's concern, an injured seaman, has been made whole by having settled with IUM.

Finally, there is the risk of prejudice to the other Defendants in this action. For example, when IUM and Atlantic Cordage were cast in the role of Defendants in this action, they jointly hired and utilized experts to evaluate the extent of Plaintiff's medical and economic losses. Both IUM and Atlantic Cordage had an obvious incentive to minimize the extent of Plaintiff's damages in order to limit their own potential liability. But if IUM is now permitted to stand in the shoes of Boney, IUM will have an incentive to inflate the extent of Boney's injuries, to the prejudice of IUM's former co-defendant, Atlantic Cordage.

As the Court noted in its May 15th Order, the reasoning of the *Casino Cruises* case is both persuasive and the only federal authority squarely on point. *See id.* IUM has not convinced the Court to depart from its earlier decision to deny IUM's request to substitute in as party plaintiff. Consequently, IUM's Motion To Substitute In As Party Plaintiff remains **DENIED.** Any and all claims IUM seeks to assert indirectly against Atlantic Cordage as assignee of the personal injury claims of Plaintiff Boney are **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**