[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 12, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15246
Non-Argument Calendar
_____

D. C. Docket No. 04-01144-CV-CAM-1

DELARIA EVANS,

Plaintiff-Appellant,

versus

BOYD RESTAURANT GROUP, LLC,

Defendant-Appellee,

JAMES BOYD, SR., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 12, 2007)**

Before BLACK, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Delaria Evans appeals <u>pro se</u> the judgment entered in favor of Boyd Restaurant Group, LLC, James Boyd Sr., and AFFC Enterprises, (collectively "Boyd"), against her complaint of employment discrimination following a special master trial; the summary judgment against her claim of retaliation; the denial of her motions to amend her complaint and extend the discovery period; and her motion to assign her action to another individual. Boyd did not respond. We affirm the summary judgment against the claim of retaliation, the denial of the motions to amend the complaint and extend discovery, and the refusal to enforce the purported assignment of Evans's rights. Because Evans did not waive her right to a trial by jury, we reverse the judgment entered against Evans's claim of employment discrimination.

## I. BACKGROUND

From January 8, 2004, to February 8, 2004, Evans worked at a Popeye's Fried Chicken restaurant owned by Boyd. James Summers was the general manager of the restaurant and Delores Simmons was the assistant manager. Summers was also the pastor of a local pentecostal church.

Evans contends that Boyd forbade the employees from attending services at Summers's church because it could create an appearance of impropriety, but Evans

2

attended Summers's church on several occasions.  Evans contends that she was terminated because she attended Summers's church.  Although Boyd did not appear in this appeal, Boyd argued to the district court that Evans was not terminated, but quit after a disagreement with Simmons about Evans's uniform.

Evans commenced an action pro se against Boyd and alleged that Boyd subjected her to religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1871.  See 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1983.  Evans later moved to amend her complaint to add a First Amendment claim and also moved to extend the discovery deadline.  The district court denied her motions.  Boyd moved for summary judgment, and the district court granted a partial summary judgment on Evans's retaliation claim and her complaint under section 1983.  Evans's complaint of religious discrimination remained.

In her complaint, Evans demanded a jury trial.  The Proposed Consolidated Pretrial Order filed by Evans on November 16, 2005, provided that the action would be tried to a jury.  On November 17, 2005, an order was entered setting a pretrial conference for November 28, 2005, before the magistrate judge assigned to the case.  The order stated, "At the pretrial conference, the parties should be prepared to state whether they will consent to a jury trial before the undersigned

Magistrate Judge. If any party does not consent, the undersigned Magistrate Judge will preside over a special master trial. Either the jury trial or the special master trial will be scheduled at the pretrial conference." The minutes from the pretrial conference stated, "Pretrial Conference held. Parties to inform Court by close of business on December 2, 2005 of decision to proceed before the Magistrate Judge with a jury trial or decision to proceed with special master trial." On December 5, 2005, the magistrate judge entered an order scheduling the action for a special master trial on February 27, 2006. No order appears in the record appointing a special master or specifying the duties and authority of the special master.

At the special master hearing, the magistrate judge heard testimony from Evans, Summers, Boyd, and Simmons. At the outset of the hearing, the magistrate judge explained that it would prepare a special master report for possible use at a later jury trial:

> I just want to make sure that everyone understands I don't make an ultimate decision about the case. It doesn't matter. I may be able to give the parties counseling or guidance at the conclusion of the hearing. All I'll be doing is a special master report. A trial will result regardless of what I make – I'm not even really making a recommendation to the district judge. I want to make sure everyone understands that although it is very, very important that all the evidence that you wish to be considered by a jury I hear because Judge Moye will have the report. It may be read to the jury in fact. So it's very important that we do this. I'm not saying that this is a good procedure. It's a procedure that we all have to abide by in this district. So just make sure everyone understands that there's really

4

not a directed verdict or an ultimate resolution of the case at the end of this proceeding; however, it may assist the parties in deciding how and if they wish to proceed.

At the end of the proceeding, the magistrate judge repeated, "As I indicated it's not binding, although I would expect you will hear from Judge Moye once he gets this, if you haven't resolved the case by then before he conducts a jury trial. Judges do many things with the special master report from reading them to the jury to they never see the light of day again, or they use them to consult with the parties about mediation."

Although Evans filed her complaint pro se, Evans was represented by counsel at the pretrial conference and the special master hearing. Counsel for Evans withdrew after the special master hearing. Afterward, Evans proceeded pro se.

After her counsel withdrew, Evans attempted to assign her action to Leonard Smith Sr. Boyd opposed the assignment, and the district court determined that the claim was not assignable and declared the assignment void.

On June 9, 2006, a special master report was filed by the magistrate judge. The report entered findings of fact and conclusions of law. The special master found Evans's testimony incredible and recommended that judgment be entered against Evans and in favor of Boyd on Evans's employment discrimination

5

complaint. Evans filed a response to the special master report and argued, among other things, that any credibility determinations should be made by the jury. Over Evans's objection, the district court entered an order adopting the findings of fact and entered judgment against Evans. The district court expressly found Evans's testimony to be incredible.

## II. STANDARDS OF REVIEW

We review a denial of discovery order for abuse of discretion. Moorman v. UnumProvident Corp., 464 F.3d 1260, 1264 (11th Cir. 2006). We review the denial of a motion to amend a complaint for an abuse of discretion. Green Leaf Nursery v. E.E. DuPont De Nemours and Co., 341 F.3d 1292, 1300 (11th Cir. 2003). "However, when the district court denies the plaintiff leave to amend due to futility, we review the denial de novo because it is concluding that as a matter of law an amended complaint 'would necessarily fail.'" Freeman v. First Union Nat'l., 329 F.3d 1231, 1234 (11th Cir. 2003) (citation omitted).

We review a summary judgment de novo and apply the same legal standards as the district court. Waddell v. Valley Forge Dental Assoc., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001).

"We review the denial of a jury trial with the most exacting scrutiny." Burns v. Lawther, 53 F.3d 1237, 1240 (11th Cir. 1995). "'[A]s the right of jury trial is

6

fundamental, [we must] indulge every reasonable presumption against waiver.'" LaMarca v. Turner, 995 F.2d 1526, 1544 (11th Cir. 1993) (quoting Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S. Ct. 809, 811-12 (1937)).

Whether an assignment is valid is a question of law that we review de novo. See Craven v. United States, 215 F.3d 1201, 1204 (11th Cir. 2000).

### III.  DISCUSSION

*A.  The District Court Did Not Abuse Its Discretion When It Refused to Extend Discovery and Denied Evans's Motion to Amend Her Complaint.*

Evans contends that the district court abused its discretion when it refused to extend discovery and denied her motion to amend her complaint, but we disagree. The district court did not abuse its discretion when it denied the request to extend discovery, which was made the day before the end of the discovery period with no explanation for the delay.  The district court also did not abuse its discretion when it denied Evans's motion to amend her complaint.  The district court correctly concluded that the proposed First Amendment claims would be futile because Boyd is not a state actor.

*B.  The District Court Did Not Err When It Entered Summary Judgment Against Evans's Complaint of Retaliation.*

Evans argues that the district court erred when it granted summary judgment against Evans's claim of retaliation under Title VII.  To establish a prima facie case

of retaliation, based on circumstantial evidence, a plaintiff must present evidence of (1) participation in statutorily protected activity; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. Brown v. Snow, 440 F.3d 1259, 1266 (11th Cir. 2006). Because Evans's complaint to the EEOC occurred a month after her termination and Evans failed to produce admissible evidence that Boyd adversely affected the terms or conditions of her employment after her termination, Evans did not establish a prima facie case of retaliation. The district court correctly entered summary judgment in favor of Boyd and against Evans's retaliation claim.

### C. The District Court Erred When It Entered Judgment In Favor of Boyd on Evans's Claim of Religious Discrimination.

Evans argues that, by adopting the recommendation and report of the special master, the district court erroneously denied Evans's right to a trial by jury. We agree. A party seeking compensatory or punitive damages under Title VII for intentional discrimination is entitled to demand a trial by jury. 42 U.S.C. § 1981a(c). Although a district court may appoint a special master in a Title VII employment discrimination case when a case has not been scheduled for trial within 120 days, see 42 U.S.C. § 2000e-5(f)(5), reference to the special master "is subject to the parties' right to a jury trial." 9 James Wm. Moore et al., Moore's Federal Practice ¶ 53.14 (3d ed. 2007). Evans made a timely demand for a jury in

her complaint. Federal Rule of Civil Procedure 39(a) provides,

> When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury. . . .

On the record before us, Evans did not consent to a non-jury trial of her complaint. No written consent to a bench trial was filed. Evans's actions do not imply consent. Although Evans participated in the special master proceeding without objection, she and the other participants were instructed by the magistrate judge that "a trial will result regardless" and "there's really not . . . an ultimate resolution of the case at the end of this proceeding." We cannot imply consent from Evans's participation in the special master hearing, and in the light of Evans's demand for a jury trial we are at a loss to understand the purpose of that hearing. C.f. Haynes v. W.C. Caye & Co., 52 F.3d 928 (11th Cir. 1995) (where a party demanded a jury trial but then proceeded to sign a document providing for a trial by a magistrate judge and participated in the bench trial without objection, she was deemed to have waived her right to a trial by jury).

Because Evans did not waive her right to a trial by jury, the district court erred when it made credibility determinations and entered judgment against Evans's complaint of employment discrimination. We reverse the judgment

9

entered against Evans's complaint and remand to the district court for proceedings consistent with this opinion.

*D. The District Court Did Not Err When It Refused To Allow The Assignment of Evans's Complaint.*

Evans argues that the district court erred when it concluded that the assignment of her employment discrimination claim to Smith was invalid. Whether an individual can assign her pre-judgment rights under Title VII is an issue of first impression for this circuit and we could find no other reported decision that has addressed this issue. The novelty of this issue is what law governs its resolution, but we leave that issue to be decided another day. Because a cause of action for discrimination in violation of Title VII is not assignable under either Georgia or federal law, we need not decide which law applies. See Kilgo v. Bowman Trans., Inc., 789 F.2d 859, 875–76 (11th Cir. 1986) (Where action arising under Title VII survived under both federal and state law, we declined to decide the law that governs the survival of an action under Title VII).

As the district court concluded, both Georgia and federal law provide the same rule regarding the assignment of claims for personal injuries. Under Georgia law, "a right of action for personal torts . . . may not be assigned." O.C.G.A. § 44-12-24 and under federal common law, "personal injury claims are not assignable absent a statute to the contrary." See Casino Cruises Inv. Co., L.C. v. Ravens Mfg.

10

Co., 60 F. Supp. 2d 1285, 1287 (M.D. Fla. 1999). The remedial scope of Title VII, which encompasses backpay, front pay, emotional pain and suffering, loss of enjoyment of life, and punitive damages, see 42 U.S.C. §§ 1981a(a)(1), (b), and 2000e-5(g), makes it more similar to a personal injury tort action than an action to enforce contractual or property rights.

Although the Supreme Court, in United States v. Burke, held that awards received in settlement of Title VII actions were "not excludable from gross income as 'damages received . . . on account of personal injuries,'" it explicated that its decision applied to awards for claims brought under Title VII before the effective date of the Civil Rights Act of 1991, which expanded the remedies available for a Title VII claim. 504 U.S. 240, 238–241 n.8, 112 S. Ct. 1867, 1872–1874 n.8 (1992). The Supreme Court stated that "Congress' decision to permit jury trials and compensatory and punitive damages under the amended Act signals a marked change in its conception of the injury redressable by Title VII." Id. at 241 n.12, 112 S. Ct. at 1874 n.12. Because we conclude that actions arising under Title VII are not assignable, the district court did not err in declaring the assignment void.

## IV. CONCLUSION

**AFFIRMED** in part; **REVERSED** and **REMANDED**, in part.