

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-2006

# Surrick v. Killion

Precedential or Non-Precedential: Precedential

Docket No. 05-2615

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Surrick v. Killion" (2006). *2006 Decisions.* Paper 806.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/806

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-2615

_____

ROBERT B. SURRICK

v.

PAUL J. KILLION, CHIEF COUNSEL, PENNSYLVANIA
OFFICE OF DISCIPLINARY COUNSEL, IN HIS
OFFICIAL CAPACITY; RALPH J. CAPPY, CHIEF
JUSTICE OF THE SUPREME COURT OF
PENNSYLVANIA, IN HIS OFFICIAL CAPACITY;
RONALD D. CASTILLE; RUSSELL M. NIGRO; SANDRA
SCHULTZ NEWMAN; THOMAS G. SAYLOR; J.
MICHAEL EAKIN; MAX BAER, JUSTICES OF THE
SUPREME COURT OF PENNSYLVANIA, ALL IN THEIR
OFFICIAL CAPACITY

Paul J. Killion,

                                        Appellant

_____

Appeal from Judgment of the United States District Court
for the Eastern District of Pennsylvania

(D.C. Civ. No. 04-CV-05668)
District Judge: Honorable James T. Giles

Submitted under Third Circuit LAR 34.1(a)
May 9, 2006

Before: BARRY, SMITH and ALDISERT, <u>Circuit Judges</u>.

(Filed June 2, 2006 )
_____

OPINION OF THE COURT
_____

A. Taylor Williams, Esq.
Administrative Office of the Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102

*Counsel for Appellant Paul Killion, et al.*

David Rudovsky, Esq.
Jonathan H. Feinberg, Esq.
Kairys, Rudovsky, Epstein & Messing
924 Cherry Street, Suite 500
Philadelphia, Pennsylvania 19107

Seth F. Kreimer, Esq.
3400 Chestnut Street
Philadelphia, PA 19104

*Counsel for Appellee Robert Surrick*

ALDISERT, <u>Circuit Judge</u>:

Paul J. Killion, Chief Counsel of the Commonwealth of Pennsylvania's Office of Disciplinary Counsel ("Office of Disciplinary Counsel"), appeals from the United States District Court for the Eastern District of Pennsylvania's order granting summary judgment to Robert Surrick in this declaratory judgment action. The District Court declared that Surrick, an attorney authorized to practice before the Eastern District of Pennsylvania but suspended by the Bar of the Supreme Court of Pennsylvania ("Pennsylvania Bar"), is permitted to maintain a law office in the Commonwealth of Pennsylvania for the sole purpose of supporting his practice before the federal court, subject to certain conditions. The Office of Disciplinary Counsel raises two challenges to our jurisdiction. First, it contends that this appeal has been rendered moot by Surrick's alleged failure to comply with the conditions imposed by the District Court. Second, it argues, as it did before the District Court, that this case is not ripe for adjudication. As to the merits, the Office of Disciplinary Counsel argues that the District Court erred in determining that Surrick is permitted to maintain a law office in Pennsylvania to support his federal practice, and urges us to adopt the Supreme Court of Pennsylvania's analysis in *Office of Disciplinary Counsel v. Marcone*, 855 A.2d 654 (Pa. 2004).

Although we conclude that we have jurisdiction over this appeal and will affirm the judgment for the reasons stated below, we believe that Surrick has not complied with the

3

conditions imposed by the District Court. Specifically, the District Court ordered Surrick to "commence an application for reinstatement to the Bar of the Supreme Court by April 15, 2005," later extended to May 15, 2005, emphasizing that:

> the requirement that Plaintiff apply for reinstatement to the Bar of the Supreme Court of Pennsylvania while being permitted to maintain an office for its practice before the Eastern District, reflects this Court's understanding that by reinstating the Plaintiff to practice before the Eastern District before his suspension from practice in the courts of Pennsylvania expires, Plaintiff was given a <u>temporary</u> pass to resume his Federal law practice and not a <u>permanent</u> absolution from requirements and oversight of the Commonwealth.

(D. Ct. Op. at 25 (emphasis in original).)

Surrick has not complied in good faith with this order and has ignored the District Court's admonition that he was only granted a <u>temporary</u> pass. Although Surrick went through the motions of reapplying to the Pennsylvania Bar, he has thus far refused to comply with the requirements for reinstatement, to wit, paying the costs of the disciplinary proceedings and enrolling in required Continuing Legal Education ("CLE") courses. Nonetheless, Surrick has asserted to this Court that he will pay the costs and enroll in the courses if he prevails on appeal. Although we do not excuse his dilatory conduct, we decline to impose the draconian punishment of vacating the

4

District Court's carefully crafted order and determining the question of federal preemption to be moot. Instead, as detailed in Part VI, we will direct Surrick to satisfy forthwith the requirements for reinstatement to the Pennsylvania Bar.

I.

Surrick was admitted to the Pennsylvania Bar in 1961 and to the Bar of the United States District Court for the Eastern District of Pennsylvania ("Eastern District of Pennsylvania Bar") in 1966. On March 24, 2000, following disciplinary proceedings, Surrick was suspended from the Pennsylvania Bar for five years. The Eastern District of Pennsylvania ordered a reciprocal suspension of thirty months. *In re Surrick*, 2001 WL 1823945 (E.D. Pa., June 21, 2001), *aff'd*, 338 F.3d 224 (3d Cir. 2003).

The offense that led to suspensions in the two jurisdictions was the determination that he "acted with reckless disregard of the truth when he leveled accusations of case fixing against certain jurists in a pleading filed in the Superior Court of Pennsylvania." *Office of Disciplinary Counsel v. Surrick*, 749 A.2d 441, 442 (Pa. 2000). In its order imposing the suspension, the Pennsylvania Supreme Court noted:

> The respondent uses his self-aggrandized role as a crusader for justice as a shield from any liability for his actions while simultaneously arguing that any judicial decision in contravention of his position proves that he is a victim of a judicial conspiracy. Respondent's personal views on

5

judicial reform cannot excuse his reckless conduct in bringing unsubstantiated claims against individual members of the judiciary.

* * *

Respondent's predilection to unprovoked character assassination whenever he receives an adverse ruling exhibits conduct that calls into question his ability to continue practicing law in a fit manner.

* * *

When a lawyer holds the truth to be of so little value that it can be recklessly disregarded when his temper and personal paranoia dictate, that lawyer should not be permitted to represent the public before the courts of this Commonwealth.

*Id.* at 447, 449.

Surrick was readmitted to the Eastern District of Pennsylvania Bar on May 17, 2004. On August 16, 2004, the Pennsylvania Supreme Court issued its decision in *Marcone*, which involved disciplinary proceedings against another Pennsylvania attorney. Therein, the Pennsylvania Supreme Court held that an attorney suspended from practice in the Pennsylvania courts but readmitted to the federal district court could not maintain a law office in the Commonwealth so long as he remains unauthorized to practice in the Pennsylvania state courts. *Marcone*, 855 A.2d at 668.

6

On December 7, 2004, Surrick initiated this declaratory judgment action against Paul Killion, Chief Disciplinary Counsel of the Office of Disciplinary Counsel, and the named justices of the Pennsylvania Supreme Court, alleging that the decision in *Marcone* was contrary to federal law and that he reasonably feared that the Office of Disciplinary Counsel would administer sanctions if he were to open a law office. Surrick sought a declaration that he is permitted to open a law office in Pennsylvania for the exclusive purpose of supporting his practice before the Eastern District of Pennsylvania and a preliminary injunction enjoining the Office of Disciplinary Counsel and the named justices from disciplining him for maintaining such an office. Surrick's claims were predicated on the Supremacy Clause of the United States Constitution and the First Amendment. The Office of Disciplinary Counsel subsequently moved to dismiss Surrick's complaint, arguing, *inter alia*, that his claims were not ripe and that his complaint failed to state a claim upon which relief could be granted.

The District Court held hearings on January 24 and March 7, 2005. At those hearings, Surrick testified that he intends to open and maintain an office to support his practice before the federal courts. He testified that he intends to practice in the medical malpractice field, suing those who bring "frivolous" malpractice lawsuits against doctors. He testified that such lawsuits would be brought in federal court pursuant to federal diversity jurisdiction. The Office of Disciplinary Counsel responded by presenting expert testimony that, using modern technology, attorneys are now able to practice law without a traditional law office.

7

On April 20, 2005, the District Court granted limited declaratory relief in Surrick's favor, declaring that Surrick "may open a legal office for the practice of law before the United States District Court for the Eastern District" of Pennsylvania subject to eight conditions:

(a) Plaintiff is authorized by the Eastern District's reinstatement Order to open and maintain a law office located at 1332 Ritter Street in Philadelphia, PA solely for the practice of law before this court;

(b) Plaintiff shall commence an application for reinstatement to the Bar of the Supreme Court of Pennsylvania by April 15, 2005 [sic];[1]

(c) There shall not be any signs on the outside of plaintiff's office building reflecting his federal practice and plaintiff shall not advertise his practice by way of outdoor advertisement or posters;

(d) Plaintiff shall provide an inscription on all stationary [sic], business cards, files, websites or other documents or correspondence clearly delineating that his practice of law is strictly limited to cases or controversies within the jurisdiction of the United States District Court for the

---

[1] The District Court later amended its order to provide Surrick until May 15, 2005, to commence an application.

8

Eastern District of Pennsylvania;

(e) Plaintiff shall not provide legal advice or consultation on state law matters and where appropriate will refer to other attorneys any state court cases or inquiries;

(f) Pursuant to his status as an admitted attorney before the Eastern District, plaintiff is authorized to represent clients on all matters within the jurisdiction of this court;

(g) Plaintiff shall promptly inform all persons seeking his legal services that he is only admitted to practice before the U.S. District Court of the Eastern District of Pennsylvania and is under suspension from practice in, and respecting legal matters to be filed in, the state courts of Pennsylvania.

(h) Plaintiff shall advise clients that if they have a[] complaint[] regarding the ethics of his legal representation . . . they may contact the Chief Judge for the Eastern District as well as the Office of Disciplinary Counsel.

The District Court denied Surrick's request for injunctive relief, and declined to reach his First Amendment arguments.

On May 13, 2005, Surrick submitted an application for reinstatement to the Pennsylvania Bar. The application was subsequently returned for being incomplete and defective.

9

According to the Office of Disciplinary Counsel, Surrick refused to pay the costs of his underlying disciplinary proceedings and to apply for the requisite 36 hours of CLE courses. Surrick disputes the costs of the proceedings and contends that he does not need to enroll in CLE courses until the resolution of this matter on appeal.

On May 24, 2005, the Office of Disciplinary Counsel filed a motion seeking relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure or, alternatively, a stay of the order pending appeal. On May 25, 2005, the District Court denied the motion "for lack of jurisdiction in light of the appeal." The District Court also stated that even if it had jurisdiction, the motion would be denied as premature because Surrick had not been given adequate opportunity to cure any defects in his application.

## II.

As an initial matter, the Office of Disciplinary Counsel argues that Surrick has failed to comply with the conditions imposed by the District Court's order and that his noncompliance renders this appeal moot. Specifically, it contends that although the period of Surrick's suspension from the Pennsylvania Bar expired on March 24, 2005, and he was eligible to reapply eight months in advance of that date, to wit, June 24, 2004, Surrick has failed to comply in good faith with the critical requirement that he "commence an application for reinstatement to the Bar of the Supreme Court of Pennsylvania by [May 15, 2005]." According to the Office of Disciplinary Counsel, Surrick has yet to pay the costs of the disciplinary

10

proceedings and has failed to enroll in the required CLE courses. The Office of Disciplinary Counsel contends that Surrick's excuse – that the amount of costs is in dispute and that he is awaiting the outcome on appeal – is not valid and that he should have contested the amount of costs before the Pennsylvania Supreme Court.

The starting point for our mootness analysis is the familiar proposition that "'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). Article III requires that an actual, live controversy "be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974); s*ee also DeFunis*, 416 U.S. at 316 ("The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.") (quotation omitted). "A central question in determining mootness is whether a change in circumstances since the beginning of the litigation precludes any occasion for meaningful relief." *Old Bridge Owners Co-op. Corp. v. Twp. of Old Bridge*, 246 F.3d 310, 314 (3d Cir. 2001); *see also* 13A C. Wright, et al., Federal Practice and Procedure § 3533, at 261 (1984). The "burden of demonstrating mootness 'is a heavy one.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

As discussed in more detail in Part VI, we agree with the

11

Office of Disciplinary Counsel that Surrick has not complied in good faith with the District Court's order. Nonetheless, we conclude that this case is not moot at this stage. What determines mootness here is whether the District Court's order is still in effect and whether Surrick is still maintaining a law office without having been reinstated by the Pennsylvania Bar. Both of these conditions are met. The District Court's order is now before this Court, and we have jurisdiction to decide not only the legal issues presented in the briefs, but the appropriate courses of action for the parties. Although we do not excuse Surrick's dilatory conduct, it is not sufficiently egregious to merit voiding the District Court's carefully crafted judgment at this stage. Rather, to insure total compliance with the District Court's order, we will require that Surrick pay the disputed costs and enroll in the required CLE courses within 10 days of the date of this judgment. In light of this resolution, we are satisfied that the parties still have a concrete interest in the outcome of this case. *See Ellis v. Brotherhood of Ry., Airline and S.S. Clerks*, 466 U.S. 435, 442 (1984) ("[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.").

III.

The Office of Disciplinary Counsel next contends that Surrick's complaint failed to assert a justiciable case or controversy as required by Article III of the United States Constitution and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Specifically, it argues that this case is not ripe for adjudication because the Office of Disciplinary Counsel has never threatened Surrick with discipline. The District Court

12

disagreed, concluding that "the threat of potential contempt sanctions against [Surrick] is clear given any reasonable reading of the *Marcone* decision" and that Surrick has presented sufficient evidence "that the threat of contempt sanctions has caused him to forego his intended plans to open a law office within the Commonwealth of Pennsylvania." Our review of the District Court's ripeness analysis is plenary. *Taylor Inv. Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1289 (3d Cir. 1993).

Ripeness prevents courts from "entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Ultimately, a case must involve "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Rice*, 404 U.S. at 246 (quotation omitted). In determining whether a case is ripe, we generally examine: "(1) 'the fitness of the issues for judicial decision,' and (2) 'the hardship of the parties of withholding court consideration.'" *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting *Abbott Labs.*, 387 U.S. at 149). In *Step-Saver Data Systems, Inc. v. Wyse Technology,* 912 F.2d 643 (3d Cir. 1990), however, we established a more refined test to determine whether we will engage in pre-enforcement review in the context of a declaratory judgment action: (1) the parties must have adverse legal interests; (2) the facts must be sufficiently concrete to allow for a conclusive legal judgment, and (3) the judgment must be useful to the parties. *Id.* at 647. With these three factors in mind, we turn to our analysis of whether the District Court erred in concluding that this case is ripe for adjudication.

A.

In assessing the adversity of the parties' interest, courts look to "[w]hether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 n.9 (3d Cir. 2001). It is not necessary for the party seeking review to have suffered a completed harm in order to establish adversity of interest so long as there is a substantial threat of real harm that remains throughout the course of the litigation. *Presbytery*, 40 F.3d at 1463.

The District Court was correct in determining that the adversity of interest prong is satisfied here. In *Marcone*, the stated issue was "whether an attorney who has been suspended from the practice of law by the Pennsylvania Supreme Court may nevertheless maintain a law office in the Commonwealth of Pennsylvania for purposes of practicing before the United States District Court for the Eastern District of Pennsylvania." 855 A.2d at 656. Answering this question in the negative, the Supreme Court of Pennsylvania concluded that maintaining an office would constitute "engag[ing] in . . . law-related activities in the Commonwealth" in violation of Rule 217(j) of the Pennsylvania Rules of Disciplinary Enforcement, and rejected the argument that any federal law preempts Rule 217(j).[2]

---

[2] Specifically, the Pennsylvania Supreme Court rejected the argument that "relevant federal statutes and rules establish that the regulation of federal practice is within the authority of the federal courts and the right to practice 'logically' includes the maintenance of a law office for that practice." *Id.* at 663-666.

14

Although, as with any case, the holding of *Marcone* is necessarily limited to the specific facts and arguments presented there, we agree with the District Court that Surrick faces a substantial threat of sanctions under any reasonable reading of *Marcone*. Like the attorney in *Marcone*, Surrick is a lawyer suspended from the Pennsylvania Bar who desires to open a legal office for the sole purpose of supporting his practice before the Eastern District of Pennsylvania. In the words of the District Court, "[Surrick] fits the prescription." Moreover, the District Court made a factual determination that Surrick's fear of sanctions has actually deterred him from opening an office, and we perceive no reason to disturb this finding. Finally, we find it significant that the Office of Disciplinary Counsel has repeatedly refused to assure either the District Court or this Court that Surrick will not be subject to the same penalties as the attorney in *Marcone* should he open a law office within the Commonwealth for the purpose of representing clients before the Eastern District of Pennsylvania.[3] *See Presbytery*, 40 F.3d

---

The court determined that preventing an attorney from establishing an office for the purpose of engaging in representation before a federal court does not "significantly frustrate" the exclusive authority of a federal court to determine who may practice law before it. *Id.* at 665.

[3] The Office of Disciplinary Counsel simultaneously contends that there is no conflict between *Marcone* and the District Court's order and that the District Court erred in rejecting *Marcone*'s preemption analysis. In addition to being contradictory, the Office of Disciplinary Counsel misreads both

15

at 1458 (finding significant that the state "expressly refused to offer any assurances" that it would not prosecute plaintiff).

Accordingly, we conclude that the threat of sanctions is sufficiently real and substantial to satisfy the first prong of the *Step-Saver* inquiry. As the Supreme Court has repeatedly stated, "'[one] does not have to await the consummation of threatened injury to obtain preventative relief. If the injury is certainly impending, that is enough.'" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)).

## B.

The second *Step-Saver* factor requires us to consider the fitness of the issue for adjudication to ensure that the declaratory judgment would in fact determine the parties' rights, as distinguished from an advisory opinion based on a hypothetical set of facts. *Presbytery*, 40 F.3d at 1468. Cases presenting

the District Court's order and *Marcone*. Although the District Court did its best to fashion an order that would address the Commonwealth's concerns, many of which were expressed in *Marcone*, its decision is nevertheless in clear conflict with *Marcone*. The only significant factual difference between this case and *Marcone* is that the attorney in *Marcone* had a sign outside his office that said, "Frank J. Marcone, Attorney at Law," without any qualification. There was therefore a greater risk of public confusion in *Marcone*. This, however, was clearly not the *ratio decidendi* of the court's holding.

16

predominantly legal questions are particularly "amenable to a conclusive determination in a preenforcement context," and generally require less factual development. *Id*. As the District Court observed, we have previously found federal preemption to be predominantly legal for purposes of the conclusiveness prong of the *Step-Saver* analysis. *See Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 421 (3d Cir. 1992) ("[W]here the question presented is 'predominantly legal,' such as one of federal preemption, the need for factual development is not as great."); *see also NE Hub Partners*, 239 F.3d at 344 ("[A] determination of whether there is preemption primarily raises a legal issue, a circumstance which facilitates entry of declaratory judgment."). Nonetheless, a plaintiff raising a predominantly legal claim must still meet the minimum requirements for Article III jurisdiction. *Armstrong*, 961 F.2d at 421.

Here, we perceive no reason why disposition of this case could not conclusively determine the legal issues in dispute. Surrick's sole legal contention is that the Office of Disciplinary Counsel's policy and practice of disciplining attorneys conflicts with the Eastern District of Pennsylvania's exclusive authority to regulate its own attorney admissions in violation of the Supremacy Clause of the United States Constitution. *See* U.S. Const. Art. VI, cl. 2. The question presented is therefore one of federal preemption, which is predominantly legal. *See Armstrong*, 961 F.2d at 421.

As to the factual record, Surrick testified as to the specific parameters he would follow were he to open a law office. He assured the District Court that he would not place a

17

sign or other advertisement outside his office, that any stationary would specifically indicate that he is only licensed to practice in the Eastern District of Pennsylvania, and that he would not provide any legal advice on state law matters. Moreover, the District Court made these assurances conditions of its order. We fail to see how any further factual development, short of waiting for Surrick to open an office and the Office of Disciplinary Counsel to then take action, could aid our resolution of the preemption question. We therefore conclude that the second *Step-Saver* prong is satisfied.

C.

The final *Step-Saver* prong requires us to consider whether a declaratory judgment will affect the parties' plans of actions by alleviating legal uncertainty. *Step-Saver*, 912 F.2d at 649 n.9; *see also NE Hub Partners*, 239 F.3d at 342 n.9. This prong is undoubtedly satisfied here. The District Court found that fear of sanctions has effectively deterred Surrick from opening a law office. A declaration of rights would permit Surrick to open a law office within the Commonwealth without fear of governmental sanctions, and also inform him of any guidelines he must follow in operating his practice. A grant or denial of relief would therefore materially affect the parties and serve the purpose of the Declaratory Judgment Act – "clarify[ing] legal relationships so that plaintiffs . . . [can] make responsible decisions about the future." *See Step-Saver*, 912 F.2d at 649.

D.

All three *Step-Saver* factors have been met in this case. Surrick faces a real and substantial threat of sanctions in light of *Marcone*, further factual development would not be helpful in resolving the predominantly legal question presented here, and a declaratory judgment will materially affect the actions of the parties. We therefore agree with the District Court that this case is ripe for adjudication. We turn now to the merits.

IV.

Although federal courts have traditionally used admission to the bar of a state court as a standard for initial admission to their bars, admission to practice law before a state's courts and admission to practice before the federal courts in that state are separate, independent privileges. *See Theard v. United States*, 354 U.S. 278, 281 (1957) ("The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom . . . lawyers are included."). Consistent with this settled proposition, the United States Supreme Court "has repeatedly emphasized . . . that disqualification from membership from a state bar does not necessarily lead to disqualification from a federal bar." *Frazier v. Heebe*, 482 U.S. 641, 647 n.7 (1987); *see Theard*, 354 U.S. at 282 ("[D]isbarment by federal courts does not automatically flow from disbarment from state courts."); *Selling v. Radford*, 243 U.S. 46, 49 (1917).

Although the federal courts are empowered with absolute authority to grant privileges and impose restrictions on their members, the dictates of comity must never be ignored. Accordingly, we acknowledge the Pennsylvania Supreme

19

Court's conclusion in *Marcone* and the Commonwealth's compelling interest in regulating the practice of law within its borders. Nonetheless, we believe that under the unique circumstances presented here – the Pennsylvania period of suspension was coming to a close and Surrick was permitted to maintain an office for an extremely limited period – the solution arrived at by the District Court, although bottomed on a federal court's undeniable right to impose privileges and restrictions on its members, is not unduly offensive to a sister sovereign's absolute prohibition of maintaining an office under the facts and circumstances in *Marcone*.

The question in this case is whether a state may prohibit an attorney admitted to the bar of a federal district court, but suspended from the state bar, from maintaining a legal office for the sole purpose of supporting a practice before the federal court. The starting point for our analysis is the seminal case of *Sperry v. State of Florida*, in which the United States Supreme Court held that the State of Florida could not enjoin a local patent practitioner, who was not admitted to the State Bar of Florida, from preparing patent applications and other legal instruments that are filed solely in the United States Patent and Trademark Office. 373 U.S. 379, 385 (1963). The Supreme Court began its analysis by recognizing that the state had a substantial interest in regulating the practice of law within its borders and that, in the absence of federal legislation, it could validly prohibit non-lawyers from preparing and filing patent applications. *Id.* at 383. Under the Supremacy Clause, however, "'the law of the State, though enacted in the exercise of powers uncontroverted, must yield' when incompatible with federal legislation." *Id.* at 384 (quoting *Gibbons v. Ogden*, 22

20

U.S. (9 Wheat) 1 (1824)). The Court reasoned that if the state were permitted to enforce licensing requirements contrary to federal law, the state would then have the power of review over federal licensing requirements:

> [a] State may not enforce licensing requirements which, though valid in the absence of federal regulation, give "the State's licensing board a virtual power of review over the federal determination" that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress. "No State law can hinder or obstruct the free use of a license granted under an act of Congress."

*Id.* at 385 (citations and footnotes omitted).

*Sperry* therefore stands for the general proposition that where federal law authorizes an agent to practice before a federal tribunal, the federal law preempts a state's licensing requirements to the extent that those requirements hinder or obstruct the goals of federal law. *Id.*; *see also In re Desilets*, 291 F.3d 925, 930 (6th Cir. 2002) ("When state licensing laws purport to prohibit lawyers from doing that which federal law entitles them to do, the state law must give way.").

The Office of Disciplinary Counsel contends that *Sperry* is distinguishable for two reasons. First, the enabling congressional statute in *Sperry* expressly allowed for the

21

prosecution of patents by non-lawyers, whereas here no Congressional statute expressly permits Surrick to maintain a law office. Second, that because Surrick intends to litigate federal diversity actions, he is for all practical matters practicing state law. *Cf. Marcone*, 855 A.2d at 654 ("State law concerns are the foundation of federal diversity actions. . . . Thus, to suggest that because maintenance of an office is limited to federal practice, it does not constitute the practice of law within the borders of a state, is to ignore the realities of current legal practice."). We reject these arguments.

A.

Under the Supremacy Clause, when state law conflicts or is incompatible with federal law, the federal law preempts the state law. Preemption generally occurs in three ways: (1) where Congress has expressly preempted state law; (2) where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; or (3) where federal law conflicts with state law. *See Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 31 (1996). This case indisputably involves "conflict preemption," which arises when "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152, 153 (1982) (internal quotations and citations omitted).

As discussed above, it is well established that "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *In re Poole*, 222 F.3d 618, 620 (9th Cir. 2000) ("[A]s nearly a century of Supreme Court precedent makes clear, practice before federal courts is not governed by state court rules."). This power is rooted in both statute, *see* 28 U.S.C. § 2071(a) ("The Supreme Court and all courts

established by Act of Congress may from time to time prescribe rules for the conduct of their business."); 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); Rule 83, Federal Rules of Civil Procedure, and the inherent authority of the federal courts, *Chambers,* 501 U.S. at 43 (using federal courts' control over admission to their bars as an example of an inherent power "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (citation and quotation omitted). Pursuant to its exclusive authority over members of its bar, *Poole*, 222 F.3d at 621, the Eastern District of Pennsylvania promulgated Rule 83.6 VII(I) of the Eastern District Rules of Civil Procedure, which expressly permits attorneys suspended from a state bar to practice before the Eastern District of Pennsylvania.[4] It is therefore beyond dispute – and the Office of Disciplinary Counsel does not question this point – that the Commonwealth lacks the authority to prohibit Surrick from practicing law before

---

[4] Rule 83.6 VII(I) of the Eastern District Rules of Civil Procedure states:

> Any attorney who is reinstated may practice before this court notwithstanding the refusal or failure of any state court to reinstate said attorney to practice. However, reinstatement to practice before this court does not authorize an attorney to practice in any other jurisdiction, and no attorney shall hold himself or herself as authorized to practice law in any jurisdiction in which the attorney is not admitted.

Local Rule 83.6 VII(I) (2005).

23

the Eastern District of Pennsylvania. *See In re Desilets*, 291 F.3d at 929 (observing that although the enabling Congressional statute in *Sperry* expressly authorized federal authorities to determine who may practice law and 28 U.S.C. §§ 1654 & 2071 do not, this is a "distinction without a difference"); *cf. United States v. Hvass*, 355 U.S. 570, 575 (1958) (holding that rules and regulations promulgated by a district court that have been lawfully authorized and have a clear legislative base qualify as "a law of the United States," as that phrase is used in a perjury statute).

The more difficult question is whether a state law prohibiting Surrick from maintaining a law office is preempted by this exclusive authority of the Eastern District of Pennsylvania to determine who may practice law before it. The Office of Disciplinary Counsel argues that conflict preemption does not apply here because, unlike in *Sperry*, where the federal statute specifically authorized non-lawyers to prepare and prosecute patents, there is no federal statute or local rule expressly setting forth the right of federal courts to determine who may maintain an office in a state.

This argument is based on both a misreading of *Sperry* and a misapprehension of the preemption doctrine. Federal law preempts not only state laws that expressly prohibit the very act the federal law allows, but those that "stand as an obstacle to the accomplishment of the full purposes and objectives" of federal law. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). Thus, federal and state law need not be contradictory on their faces for preemption to apply. It is sufficient that the state law "impose[s] . . . additional conditions" not contemplated by Congress. *Sperry*, 373 U.S. at 385.

In *Sperry*, for example, the State Bar of Florida argued that the federal license to practice before the Patent Office was

24

a narrow one, only conferring the right to practice in the physical presence of the Patent and Trademark Office and the District of Columbia. *Id.* The Supreme Court rejected this contention, stating that Sperry had to be permitted to "perform[] tasks incident to the preparation and prosecution of patent applications." *Id.* at 404. Although the Court expressly declined "to determine what functions are reasonably within the scope of the practice authorized" by federal law, it noted that a practitioner "must of course render opinions as to the patentability of the inventions brought to him, and . . . it is entirely reasonable for a practitioner to hold himself out as qualified to perform his specialized work, so long as he does not misrepresent the scope of his license." *Id.* at 402 n.47.

The reasons for the broad construction of the Supremacy Clause are plain. If preemption only applied to state laws that directly contradict federal laws, federal laws could be effectively nullified by state laws prohibiting those acts that are incident to, but not specifically authorized by, federal law. Under such a regime, state officials would have a "virtual power of review" over federal laws. *See id.* at 385 (quotation marks omitted). Accordingly, the question here is not whether any federal law expressly confers the right to maintain an office, but whether the maintenance of an office is "reasonably within the scope" of the federally-conferred license to practice law. *Id.* at 402 n.47.

We agree with the District Court that maintaining a law office is "reasonably within the scope of the practice authorized" by 28 U.S.C. §§ 1654 & 2071 and the local rules and that the state's regulation of such conduct hinders Surrick's federal license to practice law. We recognize that the Pennsylvania Supreme Court reached a contrary conclusion in *Marcone*. *See* 855 A.2d at 665 ("While regulation of the maintenance [of] a law office through which one holds himself out to the public and counsels clients may place some burden on one who has been

25

suspended from the practice of law in a particular state but who is nevertheless admitted before a federal court, our regulation of those who maintain a law office within our borders simply does not, without more, result in conflict pre-emption."). In all candor, we have extreme difficulty in accepting the notion that maintaining an office constitutes engaging in the practice of law but prohibiting one from maintaining an office does not burden the right to practice law. Perhaps the explanation lies in the difference in the record before us and that which was before our colleagues on the Pennsylvania Supreme Court. Here, the District Court heard expert testimony on the ability of an attorney to practice law without a physical office and concluded that:

> [d]espite technological advances in the practice of law – such as electronic filing and case research through internet subscriptions – physical space remains necessary for the representation of clients. A physical office space provides a location for confidential counseling with clients as well as room to store the necessary equipment, such as fax machines, legal text, telephones, paper files, typewriters and computers, association with proper management of legal matters. Without a physical office location the plaintiff would be effectively prohibited from "performing [those] tasks which are incident to" litigating cases before the Eastern District.

(D. Ct. Op. at 21 (quoting *Sperry*, 373 U.S. at 404).)

We agree with these findings. As both a practical and historical matter, the maintenance of a law office is incident to the practice of law. Although there is no precise formula for determining when a state regulation goes too far in burdening

26

federal goals, *see NW Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas*, 489 U.S. 493, 515-519 (1989) (observing that some burden on federal goals does not result in preemption), the direct effect of a state regulation prohibiting an attorney from maintaining a law office is the frustration of his or her ability to practice before a federal court.[5]  Accordingly, we respectfully disagree with the Pennsylvania Supreme Court, and conclude that the Eastern District of Pennsylvania's power to determine who may practice law before it preempts Pennsylvania law barring an unlicensed attorney from maintaining a law office.

B.

We reject the Office of Disciplinary Counsel's additional argument that the District Court ignored "the overlay of federal with state practice" and that Surrick's intention to practice solely diversity cases should influence our decision.[6]  (ODC Br. at 16.)

---

[5] The Office of Disciplinary Counsel contends that *Marcone* would not prohibit Surrick from maintaining a home office.  As an initial matter, we are dubious of this reading of *Marcone*.  If maintaining a separate law office is engaging in "law-related activities," *see Marcone*, 855 A.2d at 662, we see no reason why maintaining a home office would not be.  Moreover, we refuse to require the District Court to dissect each attorney's personal living situation to determine whether it would be feasible for him or her to establish a home office.  It is sufficient that maintaining a separate law office is, as a general matter, incident to the practice of law.

[6] The Office of Disciplinary Counsel implies that *Marcone* relied on this argument in determining that federal preemption does not apply.  (ODC Br. at 16.)  It did not.  *Marcone* only discussed the overlay of state and federal law in concluding that

Although we acknowledge that federal cases, and especially diversity cases, often involve questions of Pennsylvania law, and that the Commonwealth has a legitimate interest in preventing suspended attorneys from practicing state law, preemption analysis does not involve a balancing of state and federal interests. Once it is determined that there is a conflict between a valid federal law and a state law, the state law must give way. *See Sperry*, 373 at 385. The Office of Disciplinary Counsel cannot point to any authority indicating that a federal court's power to determine who may practice law before it depends on the type of cases a lawyer intends to practice.[7] Under 28 U.S.C.

---

the maintenance of a legal office for the purpose of practicing before a federal court constitutes "law-related activities" that the Commonwealth has an interest in regulating. *See Marcone*, 855 A.2d at 661. We do not question this determination. Absent conflicting federal law, the Commonwealth of Pennsylvania would be free to prohibit suspended attorneys from maintaining offices for the purpose of practicing before the federal courts. *See Sperry*, 373 U.S. at 383 ("We do not question the determination that under Florida law the preparation and prosecution of patent applications for others constitutes the practice of law. . . . Nor do we doubt that Florida has a substantial interest in regulating the practice of law within the State and that, in the absence of federal legislation, it could validly prohibit nonlawyers from engaging in this circumscribed form of patent practice.").

[7] It goes without saying that the Office of Disciplinary Counsel's proposed distinction is overly simplistic. Many diversity cases involve the law of states other than the forum state, and many federal question cases turn on questions of state law. If we were to adopt the Office of Disciplinary Counsel's reasoning, whether an attorney is admitted to the bar of a federal court would have to depend on the facts and law of each case.

§§ 1654 & 2071 and the local rules, the Eastern District of Pennsylvania has the authority to determine who may practice law before it regardless of the extent to which a lawyer's practice might involve questions of state law. We therefore reject the argument that the intertwining of state and federal law somehow "preclude[s] a finding of federal preemption." (ODC Br. at 16.)

V.

It is difficult to conceive of a matter that appears to jeopardize concepts of comity more than the case presently before us. It could be considered that the holding here is on collision course with the highest court of a separate sovereign – an important state that contains three judicial districts in the Third Circuit – in a matter that concerns the Commonwealth of Pennsylvania no less than the Eastern District of Pennsylvania. But there are three jurisprudential considerations present here that demonstrate a felicity of respect to the Pennsylvania Supreme Court.

First, we note that our holding does not overrule *Marcone*. Only the United States Supreme Court has the power to overrule a decision of the highest court of a state on a question of federal law. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-416 (1923); *see also* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court . . ..").

Second, decisions of the Pennsylvania Supreme Court do not bind this Court with respect to federal law, and, conversely, "decisions of the federal district courts and courts of appeal[s], including those of the Third Circuit Court of Appeals, are not binding on Pennsylvania courts, even when a federal question is involved." *Chiropractic Nutritional Assoc, Inc. v. Empire Blue*

29

*Cross and Blue Shield*, 669 A.2d 975, 979-980 (Pa. Super. Ct. 1995) (collecting Pennsylvania cases refusing to follow precedents of the lower federal courts); *see also Hall v. Pennsylvania Bd. of Probation and Parole*, 851 A.2d 859, 865 (Pa. 2004) (declining to adopt conflicting interpretation of federal law by this Court); *see generally Allegheny County Gen. Hosp. v. NLRB,* 608 F. 2d 965, 969-970 (3d Cir. 1979) (defining precedent as "a specific legal consequence [arising from] a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving identical or similar material facts and *arising in the same court or a lower court in the judicial hierarchy*.") (emphasis added and footnote omitted). Although consistency between state and federal courts is desirable in that it promotes respect for the law and prevents litigants from forum-shopping, there is nothing inherently offensive about two sovereigns reaching different legal conclusions. Indeed, such results were contemplated by our federal system, and neither sovereign is required to, nor expected to, yield to the other.

Third, recent action by the Eastern District of Pennsylvania eliminates the possibility that this will be a recurring problem. While this case was pending, the Eastern District of Pennsylvania adopted Local Rule 83.6 VII(C), which requires federal reinstatement to be held in abeyance until reinstatement to state practice has been decided.

VI.

As emphasized before, in declaring the legal rights of the parties before it, the District Court severely restricted the temporal scope of the rights granted to Surrick, granting him only a brief absolution from requirements and oversight of the Commonwealth of Pennsylvania. He was required to apply for

30

reinstatement to the Pennsylvania Bar no later than May 15, 2005. According to the Office of Disciplinary Counsel, Surrick has not fully complied with the District Court's order. Although he made the application for reinstatement to the Pennsylvania Bar, he refused to pay the costs of his underlying disciplinary proceedings and to apply for the requisite 36 hours of CLE courses.

To us this is very disturbing. For more than *one year* Surrick has had a free ride in maintaining a limited law office without respecting critical time constraints of the declaratory judgment order. Surrick's delay in paying reinstatement costs and enrolling in the requisite CLE courses is not justified. Because his Pennsylvania suspension period expired on March 24, 2005, it made not a whit of difference which party would prevail in this appeal. So long as he remains intent on practicing law, Surrick would have to reapply to the Pennsylvania Bar and enroll in the required CLE courses regardless of whether he or the Office of Disciplinary Counsel prevailed in this appeal. Moreover, the question of costs of the disciplinary proceedings is not a matter within the jurisdiction of the federal judiciary. This is a purely state issue that comes solely within the jurisdiction of the Pennsylvania courts.

We will not permit any further delay. We hereby affirm the declaratory judgment of the District Court with the following conditions: not later than ten days after the mandate of this Court issues, Surrick will file a completed application for reinstatement to the Pennsylvania Bar, pay all costs required for reinstatement, enroll in the requisite number of CLE courses, and perfect all other requirements for reinstatement. Should he have any problem with the amount owed to the Commonwealth, he shall nevertheless pay the amount requested and then seek reimbursement of any amounts he deems excessive only in the appropriate Pennsylvania administrative agencies or its Supreme

31

Court, and not in any federal court. If Surrick chooses not to follow these conditions, he will be considered in violation of a critical portion of the declaratory judgment and without any further order of this Court, he will be required to close his law office until he is reinstated to practice law as a member of the Pennsylvania Bar.

Because this order emanates from this Court, no other court in the Third Judicial Circuit has the power or authority to amend or modify it in any respect.

The mandate of this Court will issue forthwith.