[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14967

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 7, 2011
JOHN LEY
CLERK

D. C. Docket No. 8:09-cv-00264-SDM-EAJ

ESTATE OF KYLE THOMAS BRENNAN,
by and through its Administrator, Victoria L. Britton,

Plaintiff - Appellee,

versus

CHURCH OF SCIENTOLOGY FLAG SERVICE ORGANIZATION, INC.,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 7, 2011)

Before HULL, BLACK and STAPLETON,* Circuit Judges.

_____

*Honorable Walter K. Stapleton, United States Circuit Judge for the Third Circuit, sitting by designation.

STAPLETON, Circuit Judge:

The Church of Scientology Flag Service Organization, Inc. ("Scientology"), appeals from the District Court's order permanently enjoining a Florida state court from sanctioning counsel for the Estate of Kyle Thomas Brennan ("the Brennan Estate") for his continued representation of the Brennan Estate in this matter, in violation of a state court order prohibiting that representation. This appeal requires us to examine the limits imposed by the Anti-Injunction Act, 28 U.S.C. § 2283, and, more specifically, to decide whether the permanent injunction was "necessary in aid of [the District Court's] jurisdiction." *Id.* We conclude that it was not, and we will therefore reverse and vacate the District Court's injunction.

I.

On February 13, 2009, the Brennan Estate, represented by Kennan Dandar, Esq., named Scientology as a defendant in a wrongful death action filed in the United States District Court for the Middle District of Florida ("the Brennan Action"). The complaint alleged that three Scientology members deprived Kyle Brennan of his psychiatric medication, and that "while in a mentally deteriorated state caused by the abrupt denial of his prescription," he shot and killed himself. Fourteen months later, on April 12, 2010, Dandar filed an "Involuntary Motion to Withdraw as Counsel" for the Brennan Estate, explaining that he had "been

2

ordered to withdraw by a state court judge." (Dkt. 74 at 1.) The motion to withdraw was denied, and Dandar subsequently persuaded the District Court to enjoin enforcement of a state court order imposing sanctions on Dandar for failing to withdraw from the Brennan Action. This appeal followed.

The "state court judge" is Senior Judge Robert Beach of the Circuit Court for Pinellas County, Florida, who presided over another wrongful death action brought against Scientology in 2000 ("the McPherson Action"). The McPherson Action ended in a May 2004 settlement ("the Settlement Agreement") that also covered an action in Texas in which Dandar was both counsel and a named party and adversary of Scientology.

About a month after the Brennan Estate filed its federal wrongful death action, Scientology filed a motion before Judge Beach to enforce a provision of the Settlement Agreement which allegedly prohibited Dandar from participating in any way in any adversarial proceeding against Scientology. Dandar responded by arguing in his briefing before Judge Beach (1) that the Settlement Agreement did not foreclose him from representing the Brennan Estate in the Brennan Action; and (2) that, if it did have that effect, it would be unenforceable because it was in

3

violation of Florida Bar Rule 4-5.6(b) and public policy.[1]  Judge Beach held that

his court had jurisdiction over the parties to the Settlement Agreement and the

subject matter, that the Settlement Agreement prohibited Dandar's representation

of the Brennan Estate in the Brennan Action, and that this prohibition was

enforceable.  On June 10, 2009, he ordered Dandar to cease representation of all

parties other than the plaintiff in the McPherson Action in all matters against

Scientology.  Dandar appealed this order, and Florida's Second District Court of

Appeal affirmed *per curiam* and without an opinion.  *Dandar v. Church of*

*Scientology*, 25 So. 3d 1233 (Fla. Dist. Ct. App. 2009).

---

[1]  Florida Bar Rule 4-5.6(b) provides:

> A lawyer shall not participate in offering or making: . . .
> (b)  an agreement in which a restriction on the lawyer's right to practice
> is part of the settlement of a client controversy.

In 2004, the preamble to the Rules of Professional Conduct of the Florida Bar provided:

> The fact that a rule is a just basis for a lawyer's self-assessment, or
> for sanctioning a lawyer under the administration of a disciplinary
> authority, does not imply that an antagonist in a collateral
> proceeding or transaction has standing to seek enforcement of the
> rule.  Accordingly, nothing in the rules should be deemed to
> augment any substantive legal duty of lawyers or the extra-
> disciplinary consequences of violating such duty.

*See also Lee v. Dep't of Ins.*, 586 So. 2d 1185, 1188 (Fla. Dist. Ct. App. 1991) ("To use rule 4-5.6 as the basis for invalidating a private contractual provision is manifestly beyond the stated scope of the Rules and their intended legal effect.")

4

Scientology then filed a motion before Judge Beach to enforce his June 10, 2009, order, and Dandar responded by filing a motion to void the Settlement Agreement.  On February 19, 2010, Judge Beach denied Dandar's motion to void the Settlement Agreement.  On April 12, 2010, Judge Beach (1) found Dandar in civil contempt of his order of June 10, 2009, and February 19, 2010; (2) ordered Dandar to pay Scientology damages in the amount of $50,000; (3) directed Dandar to immediately file a motion to withdraw in the Brennan Action; and (4) ordered that if Dandar failed to withdraw from the Brennan Action, a civil penalty of $1,000 per day would accrue against him and his law firm.

Dandar immediately filed his "Involuntary Motion to Withdraw as Counsel" in the Brennan Action, noting as follows:

> Plaintiff objects to this motion as evidenced in the
> attached Declaration by Plaintiff's Administrator,
> Victoria L. Britton, mother of the decedent.  Both she
> and [Dandar] have exhausted all efforts to find substitute
> counsel without success.
> The estate must be represented by counsel.  Plaintiff is
> an innocent third party who will be severely damaged by
> having no other attorney to take over representation in
> this case.

(Dkt. 74 at 1-2.)  On April 22, 2010, the District Court denied the motion to withdraw, noting that (1) the Middle District of Florida's Local Rule 2.03(b)

prohibits an attorney from withdrawing from a case without leave of court; (2) the Brennan Estate "vehemently objects to Dandar's withdrawing from the case," because it "cannot find substitute counsel;" and (3) "[d]espite the state court's order[,] . . . Dandar remains a member in good standing of The Florida Bar, Dandar is able and willing to represent the plaintiff, and the parties identify neither a conflict of interest nor any other legally cognizable barrier to Dandar's continued representation in this matter." (Dkt. 77 at 1-2.) The Brennan Action thus proceeded with Dandar as counsel for the Brennan Estate.

On May 6, 2010, however, Judge Beach directed Dandar to appear before him to show cause why he should not be held in criminal contempt of the orders of June 10, 2009, and April 12, 2010. In response, the Brennan Estate filed an "Emergency Motion for Injunction" in the Brennan Action requesting an injunction against Scientology "and if necessary, the State Circuit Court to prohibit interference with this Court's orderly progression of this case." (Dkt. 104 at 1, 3.) The District Court denied the motion, ruling as follows:

> Because Dandar's withdrawal requires federal court approval, a state court injunction or other order against Dandar cannot compel his withdrawal. A court should not enter an injunction or order that cannot be enforced through coercive contempt sanctions.

* * *

6

> Nonetheless, the state court entered an order purporting to direct Dandar to withdraw. Dandar has attempted to comply with the state order, but his motion to withdraw was denied. The state court can neither command Dandar's withdrawal from this action nor otherwise interfere with the supervening federal jurisdiction. Because no unlawful interference has occurred (and remains unlikely given the nature of the governing law and the provisions of Rule 4-5.6(b), Rules Regulating The Florida Bar, which have drawn little comment), Dandar's motion is DENIED. Comity commands the federal court's not assuming that a state court will enter an unlawful order or interfere with the orderly administration of the federal court.

(Dkt. 108 at 2 (internal citations omitted).)

The following day, however, Judge Beach held a hearing that resulted in further sanctions for Dandar, and, in response, the Brennan Estate filed its "Second Emergency Motion for Permanent Injunction and Motion for Sanctions." The District Court held a hearing on September 28, 2010, and issued an opinion and order that same day granting the Brennan Estate's requested injunction.[2] The District Court determined that it had "no just and reasonable option other than to act in defense of [its] jurisdiction over the cases and controversies, parties, and

---

[2] The District Court issued an amended injunction on October 12, 2010, in response to a motion filed by Judge Beach to dissolve the injunction issued on September 28, 2010. Scientology acknowledges that "the change in the amended version [of the injunction] is immaterial to the arguments" it sets forth here. Appellant's Br. at 4. Nonetheless, the October 12, 2010, amended injunction is the operative document in this appeal, and so all references and citations to the District Court's injunction herein are to the amended injunction, and our disposition here is with respect to that document.

lawyers in the district court and in protection and preservation of the status quo pending resolution of the action submitted to the district court for determination." (Dkt. 173 at 26.) Thus, the District Court, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and "the court's inherent power to preserve its jurisdiction," granted the Brennan Estate's injunction motion and issued the following order:

> The defendant Scientology; the defendant Scientology's counsel in this action; and . . . any other person or entity acting in concert with Scientology or Scientology's counsel in this action and with actual notice by personal service or otherwise of this order, which persons include state judge Robert Beach of Pinellas, County, Florida, and any other judge of the Circuit Court for Pinellas County, Florida, or elsewhere presiding in Estate of Lisa McPherson v. Church of Scientology Flag Service Organization, et al., Case No. 00-005682CI-78; UNC: 522000CA005682XXCICI, **PERMANENTLY ENJOINED** from levying, assessing, or furthering to any extent any levy or assessment or any penalty, charge, damage, fine, suspension or revocation of any right, privilege, or emolument, or the like, including convening of a hearing or entry of any order or judgment, any execution or instruction for levy, any supplemental proceeding or discovery in aid of execution, or other undertaking of a similar nature, on account of Kennan Dandar's representation of the plaintiff in *Estate of Brennan v. Church of Scientology*, 8:09-cv-264-T-23EAJ, in the United States District Court for the Middle District of Florida, or his failure to accomplish withdrawal from representation in the case, or on account of the manner and means of his representation in the case, including the manner and means of his moving to withdraw.

8

(Dkt. 173 at 27-28.) Scientology appealed to this Court.

Meanwhile, Dandar appealed Judge Beach's order of April 12, 2010, arguing in part that the Circuit Court for Pinellas County lacked subject matter jurisdiction over the proceeding to enforce the Settlement Agreement. The Second District Court of Appeals "reverse[d] the circuit court's order to the extent that it awarded $50,000 in damages against Dandar and in favor of [Scientology]," but "affirm[ed] the circuit court's order in all other respects." *Dandar v. Church of Scientology*, No. 2D10-2194, 2011 Fla. App. LEXIS 1557 (Fla. Dist. Ct. App. Feb. 11, 2011).

On May 20, 2011, Dandar filed a Petition for Writ of Prohibition with the Florida Supreme Court seeking an order "directing the Second District to issue an order recognizing that the circuit court was without jurisdiction to enter any order subsequent to the joint voluntary dismissal with prejudice filed on June 8, 2004, and exceeded its jurisdiction by imposing a practice restriction and orders of criminal contempt of court." (Supp. App. 45 at 24.) That petition remains pending.

II.

The District Court for the Middle District of Florida had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), which provides that "the courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . granting . . . injunctions." We review a district court's decision to grant a permanent injunction for an abuse of discretion. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1349 (11th Cir. 2009) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). However, "[w]e review the underlying findings of fact for clear error and conclusions of law de novo." *Id.* Whether a district court has the authority to enjoin a state court action under an exception to the Anti-Injunction Act is a question of law that we review *de novo*. *See TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1294 (11th Cir. 1998).

## III.

Scientology contends that the District Court's entry of the permanent injunction violated the Anti-Injunction Act. We agree.

The District Court issued the injunction "[p]ursuant to the All Writs Act, 28 U.S.C. § 1651(a)" (Dkt. 173 at 27), and "[i]ndeed, unless specifically constrained

10

by an act of Congress, the [All Writs] Act authorizes a court to issue writs any time, 'the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it.'" *Burr & Forman v. Blair*, 470 F.3d 1019, 1026 (11th Cir. 2006) (quoting *Adams v. United States*, 317 U.S. 269, 273 (1942)). The Anti-Injunction Act, however, "serves as a check on the broad authority recognized by the All Writs Act," and "prohibits federal courts from utilizing that authority to stay proceedings in state court unless the requirements of one of three narrow exceptions are met." *Id.* at 1027.

"Under the Anti-Injunction Act, an injunction halting a state court proceeding is inappropriate, 'except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" *Id.* (quoting 28 U.S.C. § 2283). While the District Court did not explicitly reference the Anti-Injunction Act, the Court entered the permanent injunction pursuant to its "inherent power to preserve its jurisdiction and preserve the status quo pending litigation." (Dkt. 173 at 27.) Thus, it appears that the District Court invoked the Anti-Injunction Act's second exception.[3] However,

---

[3] To the extent that the District Court's opinion can be read to have invoked the Anti-Injunction Act's third exception, "where necessary . . . to protect or effectuate its judgments," 28 U.S.C. § 2283, we note that the third exception "authorizes an injunction to prevent state litigation of a claim or issue that previously was presented to and decided by the federal court." *Smith v. Bayer Corp.*, 564 U.S. ___, ___ S. Ct. ___, No. 09-1205, slip op. at 6 (U.S. Jun. 16 2011) (quotation marks omitted). It "is essentially a res judicata concept designed to prevent

11

here the injunction was not "necessary in aid of [the Court's] jurisdiction." 28 U.S.C. § 2283.

"In light of the federalism concerns underlying [the] Anti-Injunction Act, courts construe . . . the 'necessary in aid of its jurisdiction' . . . exception[] narrowly." *Burr & Forman*, 470 F.3d at 1028 (citing *T. Smith & Son, Inc. v. Williams*, 275 F.2d 397, 407 (5th Cir. 1960); *Delta Air Lines, Inc. v. McCoy Rests., Inc.*, 708 F.2d 582, 585 (5th Cir. 1983)). "'[A]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed.'" *Smith v. Bayer Corp.*, 564 U.S. ___, ___ S. Ct. ___, No. 09-1205, slip op. at 6 (U.S. Jun. 16, 2011) (quoting *Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297, 90 S. Ct. 1739, 1749 (1970)). This is reflected in our review of the relevant jurisprudence in *In Re Ford Motor Co.*, 471 F.3d 1233 (11th Cir. 2006). *Ford Motor* was a class action brought against Ford for alleged breaches of its franchise agreements in which the District Court had enjoined a similar class action brought in an Ohio court. We there explained:

> The Anti-Injunction Act allows a federal court to enjoin a state court proceeding "in aid of its

---

issues that have already been tried in federal court from being relitigated in state court." *Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993). This is not the case here.

12

jurisdiction." 28 U.S.C. § 2283. In *Atlantic Coast Line*, the Supreme Court emphasized that *necessity* is required to invoke this exception; "it is not enough that the requested injunction is related to that jurisdiction." *Atl. Coast Line*, 398 U.S. at 295, 90 S. Ct. at 1747. Ordinarily, a federal court may issue an injunction "in aid of its jurisdiction" in only two circumstances: (1) the district court has exclusive jurisdiction over the action because it had been removed from state court; or, (2) the state court entertains an *in rem* action involving a res over which the district court has been exercising jurisdiction in an *in rem* action.

* * *

Neither of these scenarios is present in the case at hand. First, the Bayshore Action did not come to the district court via removal. Second, the Bayshore Action is an action *in personam*, not an action *in rem*.

We have acknowledged a third scenario in which the enjoining of a state court proceeding might be necessary and thus permissible. Called the "complex multi-state litigation" exception, it enables a district court to enjoin a state court proceeding in aid of its jurisdiction when it has retained jurisdiction over complex, *in personam* lawsuits. In *Battle v. Liberty National Life Insurance Co.*, 877 F.2d 877 (11th Cir. 1989), we reviewed a district court order enjoining the plaintiffs in three state court proceedings from pursuing claims that were substantially similar to those claims settled by final judgment in a federal antitrust class action lawsuit.

* * *

We observed that "it makes sense" to consider so complicated a case, in which both the court and the

13

parties had invested considerable time and resources, like a "*res* to be administered." *Id.* at 882.

> We reached the same conclusion in *Wesch*, a case involving an Alabama congressional redistricting plan administered by a three-judge court.

\* \* \*

> The exception recognized in *Wesch* and *Battle* is predicated on both complexity and potential for interference. The situation before us bears little factual similarity to those cases. We do not have before us a class action affecting the rights of hundreds (or even dozens) of parties, nor are we confronted with a complex and carefully crafted settlement or other plan which would be undermined by a state court adjudication. The litigation in the Ohio court, on its own, would not displace or frustrate the district court's management of the case now pending before it. As compared to *Battle* and *Wesch*, the difficulties involved in resolving the Bayshore Action are different in kind and smaller in magnitude. Thus, the second exception to the Anti-Injunction Act does not apply.

*Id.* at 1250-53 (emphasis in original; footnote omitted).

Here, as in *Ford Motor*, the Brennan Action had not been removed from the state court and was not an *in rem* action. Nor can the Brennan Action be characterized as complex or as having the potential for the kind of interference which the Court found in *Battle* and *Wesch*. It could hardly be analogized to an *in rem* proceeding. There was a single plaintiff who sought to litigate a tort claim that was wholly unrelated to the subject matter of the enjoined state proceeding.

14

The limited purpose of the District Court's injunction was to ensure that a particular attorney remained as counsel for a party before it. As we noted in *Burr & Forman*, 470 F.3d at 1029, the "complex litigation" scenarios recognized in *Battle* and *Wesch* "represent the outermost limits of the exception" to the rule against enjoining *in personam* cases in a state court. Like the situation before the Court in *Ford Motor*, the situation before the District Court here was far beyond those "outermost limits."

We have been referred to, and have found, no case suggesting that a district court, consistent with the Anti-Injunction Act, may enjoin a state judicial proceeding in order to ensure that a particular attorney will represent a party before it. Contrary to the suggestion of the Brennan Estate, *Surrick v. Killion*, 449 F.3d 520 (3d Cir. 2006), does not support such a proposition. *Surrick* was a declaratory judgment action in which the Court held that an attorney suspended from the Pennsylvania Bar may "open a legal office [in Pennsylvania] for the practice of law before the United States District Court for the Eastern District" of Pennsylvania, despite a Pennsylvania Office of Disciplinary Counsel rule stating that "an attorney suspended from practice in the Pennsylvania courts but readmitted to the federal district court could not maintain a law office in the Commonwealth so long as he remains unauthorized to practice in the Pennsylvania

15

state courts." *Id.* at 524. *Surrick* was a preemption case decided under the Supremacy Clause of the United States Constitution. It involved a straightforward application of the holding of *Sperry v. Florida*, 373 U.S. 379 (1963), that "[n]o State law can hinder or obstruct the free use of a license granted under an act of Congress," *id.* at 385 (citation omitted), namely the license to practice before the federal court. Here, the only applicable state law is Florida's law of contracts, which does not conflict with the privilege of practicing before the federal courts. Dandar's privilege to practice in federal court in particular cases was voluntarily surrendered by him in return for consideration; it was not taken from him by a state law that stood "as an obstacle to the accomplishment of the full purposes and objectives of [the] federal law" permitting him to practice in the federal courts. *Surrick*, 449 F.3d at 532 (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)). Further, since *Surrick* involved no injunction of a state court proceeding, the Anti-Injunction Act was, of course, not applicable.

Case law from our sister Courts of Appeals supports the conclusion we reach based on *Ford Motor*. In *Retirement Systems of Alabama v. J.P. Morgan Chase & Co.*, 386 F.3d 419 (2d Cir. 2004), numerous federal class actions arising out of WorldCom Inc.'s bankruptcy were consolidated in the District Court for the Southern District of New York, and a trial date was set. *Id.* at 421-22.

16

Meanwhile, another action arising out of the WorldCom bankruptcy was filed in state court in Alabama, and a trial date was set three months before the federal trial date. *Id.* at 422-23. The defendants in the federal action moved to stay the state trial until after the federal one. The District Court granted the injunction, ruling that it was necessary in aid of its jurisdiction because it was "necessary to preserve the schedule . . . and to keep the federal MDL litigation on its own 'path to judgment.'" *In re WorldCom, Inc. Sec. Litig.*, 315 F. Supp. 2d 527, 547 (S.D.N.Y. 2004). The Court of Appeals for the Second Circuit reversed, holding that the "necessary in aid of its jurisdiction" exception "does not permit a district court – even a district court managing complex, multidistrict litigation such as the WorldCom securities litigation – to enjoin state court proceedings simply to preserve its trial date." *Retirement Sys.*, 386 F.3d at 421. *See also Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091, 1101-02 (9th Cir. 2008) ("[T]he mere fact that the actions of a state court might have some effect on the federal proceedings does not justify interference.").

The District Court's concern about the ability of the Brennan Estate to secure other counsel was certainly understandable and commendable. It was entitled to do everything it could to facilitate the Brennan Estate's search for alternative counsel, starting with a stay of the proceedings sufficient to permit an

17

orderly and thorough canvass of all available sources of representation.[4]  The

Court was not responsible for securing representation for the parties before it,

however, and its jurisdiction to adjudicate the claim of the Brennan Estate was not

dependent on its doing so.

Finally, "the mere fact that a state court may reach a conclusion that differs

from what a federal court would prefer does not change the result." *Negrete*, 523

F.3d at 1102.  In its opinion, the District Court listed nine state law issues that

concerned it.  It declined to address them, however, explaining:

> Other issues abound, but correcting an error, even a
> manifest and palpable error, by the state circuit court
> exceeds the usual bounds of the district court.  (The
> propriety or effectiveness of the actions of another court
> are susceptible to review only in proper and defined
> circumstances, for example, if a party seeks to enforce a
> "void" judgment or a foreign judgment that offends an
> important public policy of the forum court and fails to
> warrant "full faith and credit.")  In the present

---

[4] Dandar advised the Court in his motion and at oral argument that he had unsuccessfully sought alternative counsel.  He also filed a "Declaration" of the Administratrix of the Brennan Estate indicating that she had "talked to many lawyers in different states and each one turned me down as soon as they heard it involved the Church of Scientology."  (Dkt. 74 at 5.)  No evidentiary hearing took place, however, and neither Dandar nor the Administratrix provided any account of where and how they had solicited alternative representation.  Indeed, the administratrix, in her subsequent deposition, denied that she had contacted anyone other than Dandar "since the filing of the wrongful death action for purposes of representing the estate." (Dkt. 129 at 69.)  It is thus far from clear on the current record that alternative representation would not be available if and when the existing controversies are resolved and Dandar has elected to withdraw.

18

circumstance, the focus of the district court is much more narrow and specific.

(Dkt. 173 at 21-22.) This view is, of course, correct to the extent it reflects an acknowledgment by the District Court that it had no jurisdiction to review the rulings of the state courts in connection with enforcement of the Settlement Agreement. That jurisdiction is reserved to the appellate courts of Florida and the Supreme Court of the United States. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).[5]

The District Court goes on, however, to attribute "the present jurisdictional friction" to Judge Beach's failure to follow a clearly established rule that "a judge should not undertake, directly or indirectly, overtly or through a surrogate, to

---

[5] Indeed, we and the District Court are required to give Judge Beach's rulings and orders the same effect they would be given by the courts of Florida – *i.e.*, to give them full faith and credit. 28 U.S.C. § 1738. It follows that we are required to accept that Dandar voluntarily committed himself contractually not to represent parties litigating against Scientology and that that commitment is legally enforceable under state law. Accordingly, the District Court erred when, despite Judge Beach's orders of June 10, 2009, and April 12, 2010, it concluded that there was "no . . . legally cognizable barrier to Dandar's continued representation" in the Brennan Action. (Dkt. 77 at 2.) The Brennan Estate questions whether Judge Beach's court had jurisdiction to issue its orders, but while "federal courts may inquire into the jurisdictional basis of a judgment before according the judgment full faith and credit[,] . . . [t]hat inquiry is . . . constrained by principles of *res judicata*," such that "a judgment is entitled to full faith and credit – even as to questions of jurisdiction – when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Am. Steel Bldg. Co. v. Davidson & Richardson Constr. Co.*, 847 F.2d 1519, 1521 (11th Cir. 1988) (internal quotation marks and citations omitted). Here, it is undisputed that the jurisdictional issue was litigated in the Circuit Court for Pinellas County and in Florida's Second District Court of Appeal, and so we may not reach the question of whether the state court had jurisdiction to enter its orders.

19

compel an act by another judge, especially in a different jurisdiction. (The nature of the judicial power permits a judge to order only that which the judge can accomplish through the sundry powers of the office.)" (*Id*. at 24.) In the District Court's view, the failure to follow this rule had resulted in a grave injustice – Judge Beach's imposition of contempt sanctions on Dandar for failure to withdraw from the federal representation when he had no power to do so following the denial of his motion to withdraw. The District Court believes that this injustice and the "present jurisdictional friction" could have been avoided if Judge Beach had ordered Scientology to ask the District Court to disqualify Dandar in the case before it. Once again, we understand the District Court's concerns and acknowledge that its concerns are legitimate ones. The Court fails to explain, however, how the issues presented by these critiques are distinguishable from the other issues it acknowledges are properly pressed only upon the state judiciary that is authorized to review Judge Beach's orders. We do not find them distinguishable and consider it clear under our Anti-Injunction Act case law that a district court conviction that a state proceeding has reached or is reaching an erroneous result does not alone warrant an injunction against those proceedings.[6]

---

[6] Because we conclude that the district court's injunction violates the Anti-Injunction Act, we need not reach the merits of Scientology's argument that the injunction also violates the abstention doctrine in *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746 (1971), or its argument that the permanent injunction is not properly supported by the evidence.

## IV.

We conclude that the permanent injunction entered by the District Court was not "necessary in aid of its jurisdiction," 28 U.S.C. § 2283, and, accordingly, was issued in violation of the Anti-Injunction Act. We will reverse and vacate the injunction.

REVERSED and VACATED.