[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 19, 2012
JOHN LEY
CLERK

_____

No. 11-11939

_____

D.C. Docket No. 2:08-cv-00881-MEF-TFM


STATE OF ALABAMA,

                                        Plaintiff - Appellant,

              versus

CENTERS FOR MEDICARE AND MEDICAID SERVICES,
DEPUTY ADMINISTRATOR OF THE CENTERS FOR
MEDICARE AND MEDICAID SERVICES,
ADMINISTRATOR FOR THE CENTERS FOR
MEDICARE AND MEDICAID SERVICES,
SECRETARY OF HEALTH AND HUMAN SERVICES,
DEPARTMENT OF HEALTH AND HUMAN SERVICES,

                                        Defendants - Appellees.


_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(March 19, 2012)

Before BARKETT and HULL, Circuit Judges, and HINKLE,[*] District Judge.

PER CURIAM:

The State of Alabama sued the federal Centers for Medicare and Medicaid Services ("CMS") claiming that CMS violated the federal Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-596, 701-706 (2006), by issuing—without notice and an opportunity for public comment—an October 28, 2008 letter to state health officials (the "SHO letter"). The SHO letter, which is signed by the Acting Director of the Center for Medicaid and State Operations, states that its purpose is to "explain[] [CMS's] policy regarding the refunding of the Federal share of Medicaid overpayments, damages, fines, penalties, and any other component of a legal judgment or settlement when a State recovers pursuant to legal action under its State False Claims Act (SFCA)."

The SHO letter requires states filing Medicaid-fraud and false claims lawsuits (1) to seek to recover damages to compensate for both state and federal overpayments on the Medicaid program, (2) in the event of an SFCA recovery, to submit to CMS both "the Federal amount originally paid attributable to fraud and abuse, [and] a proportionate share of any other recovery," including "fines,

---

[*]Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida, sitting by designation.

penalties, or assessments imposed" under the state's false claims act, and (3) to reimburse CMS for the federal share of any recovery within specified time limits. In addition to the notice-and-comment challenge under the APA, Alabama also argued that the substantive requirements of the SHO letter exceeded CMS's statutory and constitutional authority.

It is undisputed that, to date, CMS has not sought to collect money from Alabama based on the terms of the SHO letter. In a March 30, 2010 order, the district court determined that all of Alabama's challenges to the substance of the SHO letter were not ripe because judicial review would unduly interfere with the administrative process, the claims rested upon the application of the terms of the SHO letter to uncertain and contingent future events (such as CMS's later attempting to collect the federal share of a future Medicaid fraud judgment in favor of Alabama), and, in any event, Alabama would enjoy an extensive administrative-review process to challenge any application of the terms of the SHO letter.

In a February 18, 2011 published order, the district court agreed that the SHO letter constituted a substantive administrative rule issued without the notice-and-comment procedures mandated by the APA. See Alabama v. Centers for Medicare & Medicaid Servs., 780 F. Supp. 2d 1219 (M.D. Ala. 2011). In

fashioning a remedy for the APA violation, the district court concluded that the "seriousness of CMS's failure to engage in notice and comment rulemaking—a failure for which no explanation has been provided—counsels in favor of vacatur in this case." Id. at 1232. The district court then vacated the SHO letter. After doing so, the district court denied Alabama's request for an injunction.[1]

On appeal, Alabama argues that the district court abused its discretion by denying injunctive relief and that the district court erred in dismissing as unripe Alabama's substantive challenges to the SHO letter. We address each of Alabama's contentions in turn.

## A.    Denial of Injunction

Alabama first argues that the district court abused its discretion by failing to articulate its reasons for denying injunctive relief. See Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1563 (11th Cir. 1988) (holding that district court must articulate its rationale for denying equitable relief).[2] However, we cannot agree that the district court's opinion is inadequate because the district court's reasons for denying injunctive relief are obvious and implicit in its decision to award the

---

[1] Although CMS initially cross-appealed, CMS voluntarily dismissed its appeal on July 15, 2011.

[2] We review the district court's decision to withhold or to issue a permanent injunction for abuse of discretion, and its underlying conclusions of law de novo. See Estate of Brennan ex rel. Britton v. Church of Scientology Flag Serv. Org., 645 F.3d 1267, 1272 (11th Cir. 2011).

equitable relief of vacatur. The district court noted that vacatur served the important purpose of vindicating the notice-and-comment requirement, and implicitly concluded that no further relief was necessary given that the SHO letter is vacated and of no effect. See Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15 (1977) (discussing discretion to choose among equitable remedies).

We also find meritless Alabama's remaining arguments that, once the SHO letter was vacated, Alabama was entitled to an affirmative injunction prohibiting CMS from ever adopting the policies embodied in the SHO letter. First, Alabama argues that the district court believed that the APA prohibits issuance of both injunction and vacatur, which Alabama claims is erroneous. However, there is nothing in the record suggesting the district court believed the APA imposed that limitation on its equitable powers. The basis for all of the remaining arguments appears to be Alabama's view that the vacatur of the SHO letter constituted a decision on the merits that compelled the district court to issue the injunction sought. However, the district court did not address the merits, but based its ruling on procedural deficiencies regarding the manner in which the SHO letter was issued.

Moreover, it remains unclear what the requested injunction would accomplish that the district court's vacatur of the SHO letter does not already do.

As CMS notes in its brief, preclusion principles prevent the agency from enforcing the terms of the SHO letter against Alabama. And, in any event, Alabama has presented no evidence that CMS has issued a disallowance to Alabama based on the terms of the SHO letter. In sum, the district court did not abuse its discretion in denying injunctive relief.

## B. Ripeness of Alabama's Substantive Claims

Alabama's final challenge relates to its claims that the Medicaid reimbursement policy reflected in the SHO letter exceeded CMS's statutory and constitutional authority or was arbitrary and capricious. The district court dismissed these claims as unripe, and we find no error in this conclusion.[3] Because the district court vacated the SHO letter, there is no longer any authoritative CMS rule, guideline, or statement embodying the policies that Alabama opposes. Consequently, we have no way of knowing if these policies will be adopted again by CMS, in what form they will be adopted, or what the concrete repercussions of those policies will be. See Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 160-63 (1967); see also Elend v. Basham, 471 F.3d 1199, 1211 (11th Cir. 2006) (requiring that plaintiffs show at least "a credible threat of

---

[3] Ripeness is a legal question that we review de novo. Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006).

prosecution" in order to obtain pre-enforcement review) (internal quotation marks omitted).  In this posture, a ruling on Alabama's challenge to CMS's now-vacated policy would be nothing more than an advisory opinion regarding "contingent future events that may not occur as anticipated, or indeed may not occur at all." Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985) (internal quotation marks omitted).

In the event that CMS later seeks to obtain a portion of Alabama's recovery in a future Medicaid-fraud lawsuit, Alabama will have ample opportunity to challenge CMS's action.  This is especially so because Alabama has a remedy through the administrative process.[4]  See Toilet Goods, 387 U.S. at 165 (holding claims unripe where agency action "can . . . be promptly challenged through an administrative procedure"); Nat'l Adver. Co. v. City of Miami, 402 F.3d 1335, 1340 (11th Cir. 2005) (holding the case unripe absent further factual development through an available administrative procedure).

Because the district court did not abuse its discretion in refusing to issue an injunction in addition to vacating the SHO letter, and because Alabama's remaining claims are unripe, the district court's judgment is

---

[4] The Medicaid statute provides for administrative reconsideration of any reduction in quarterly payments, 42 U.S.C. § 1316(e)(1), including an administrative appeal, id. at § 1316(e)(2)(A), the outcome of which may be challenged in federal court, id. at § 1316(e)(2)(C).

**AFFIRMED.**